**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

# FILED



| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**, 4247 Locust Street, #806 Philadelphia, PA 19104 | : : : : : | DEC 0 1 2005 **MICHAEL E. KUNZ, Clerk** By _MAC_ **Dep. Clerk** |
| Plaintiff, v. **Learn The Skills Corp.**, et al. Defendants. | : : : : : : : : | **CASE NO.:** 05-cv-2752 **Hon. Harvey Bartle, III** |

## CERTIFICATE OF SERVICE

I, Gordon Roy Parker, hereby certify that I have served the foregoing **Brief In Opposition**

**To Defendant Ross's Motion To Dismiss** and **Motion To Conduct Jurisdictional Discovery** on

the following Defendants, by the following means:

| | | |
|---|---|---|
| **Trustees of the Univ. of PA** Dennis G. Young (Counsel) Montgomery, McCracken, Walker & Rhoads 123 South Broad Street, 28th Fl. Philadelphia PA 19109 **Hand Delivery** | **Mary Kay Brown, Esq.** Buchanan Ingersoll 1835 Market Street, 14th Floor Philadelphia, PA 19103 **Hand Delivery** | Matthew S. Wolf, Esq. 241 Kings Highway East Haddonfield, NJ 08033 Attorney For LTSC And Defendant **Regular Mail** |
| Thom E. Geiger 817 North McCrary Road Columbus, MS 39702-4320 **Regular Mail** | Formhandle@fastseduction.com Learn The Skills Corp. 955 Massachusetts Ave, #350 Cambridge, MA 02139 **Regular Mail** | |

This the 1st day of December, 2005.

_Gordon Roy Parker_ (signature)

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA 19104
(215) 386-7366
GordonRoyParker@aol.com
Plaintiff, Pro Se



# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**, 4247 Locust Street, #806 Philadelphia, PA 19104<br><br>Plaintiff,<br><br>v.<br><br>**Learn The Skills Corp.**, et al.<br><br>Defendants. | : : : : : : : : : : : | **CASE NO.: 05-cv-2752**<br><br>**Hon. Harvey Bartle, III** |

## ORDER

AND NOW, this ___ day of _____, 2006, in consideration of **Defendant Paul J. Ross's Motion To Dismiss**, and all responses thereto, the motion is **denied.** A memorandum opinion is attached.

It is further ORDERED that the first two sentences of Defendant Ross's Introduction in his Memorandum be stricken from the record.

SO ORDERED.

_____
                                                                      J.





**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

**FILED**

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**, 4247 Locust Street, #806 Philadelphia, PA 19104 | : : : : : | **DEC 0 1 2005** **MICHAEL E. KUNZ, Clerk** By _____ Dep. Clerk |
| Plaintiff, | : : | **CASE NO.:** 05-cv-2752 |
| v. | : : | |
| **Learn The Skills Corp.**, et al. | : : : | Hon. Harvey Bartle, III |
| Defendants. | : | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT PAUL J. ROSS'S SECOND MOTION TO DISMISS**

**Plaintiff** Gordon Roy Parker, in the above-styled action, submits this Brief In Opposition to Defendant Ross's Second Motion To Dismiss, and requests that a hearing be held in this matter so as to perpetuate testimony from Defendant Ross. Since the body of Defendant Ross's motion is contained in the supporting Memorandum of Law, this Brief in Opposition will address that document.

## I.   INTRODUCTION

These RICO defendants, while disclaiming conspiracy, seem to follow the identical playbook when attempting to have this and any similar case dismissed: deride Plaintiff, say he has no case, and urge the court to dismiss the matter prior to any possible ruling on the merits, thus short-circuiting the entire process. In this case, Defendant Ross claims Plaintiff has an "addiction to litigation,"[1] a claim which has no basis in fact or relevance to the merits of this action, and which further ignores Defendant Ross's own litigiousness, which includes a well-publicized (by Defendant Ross) lawsuit against another business competitor (R. Don Steele), and

---

[1] Defendant's Memorandum of Law, p. 1.

threats of lawsuits against other competitors for infringement of ideas he claims were his that
were not properly attributed to.

Defendant Ross further mischaracterizes Plaintiff's litigation history by stating the
following:

> Plaintiff has commenced not less than seven (7) actions in this court within the past four
> (4) years, all relating to a similar set of underlying fact, most, if not all, being summarily
> dismissed.[2]

The "seven" actions to which Defendant refers include 1) two employment-
discrimination lawsuits against Defendant University of Pennsylvania which are based on
conduct relating to their employment practices;[3] 2) a lawsuit against Google relating to the
legality of Google's internet archive and whether or not Google is entitled to immunity under 47
USC §230 as a distributor;[4] 3) a miscellaneous case against Comcast internet to perpetuate
prefiling discovery;[5] 4) a lawsuit against "Wintermute" and another against Defendant LTSC,[6]
both of which were dismissed *without prejudice* due to Plaintiff's inability to effect service of
process (in Parker v. Wintermute), and due to a higher pleading standard relating to *pro se*
Defendant Geiger.

The cases which are related to this one were never dismissed with prejudice and were
not even appealed. In the case of Parker v. Wintermute, service of Wintermute was impossible
because Defendant Penn (not a party in that case) claimed it could not identify Wintermute,
despite having ample evidence to do so, *and* despite Detective Blackmore of Penn having related
to Plaintiff that he had ordered Wintermute to cease and desist threatening Plaintiff. Evidence
has since come to light which supports the claim of obstruction of justice and perjury on the part

---

[2] Id.
[3] Parker v. University of Pennsylvania, E.D.Pa. #02-cv-567, and Parker v. Trustees of the University of
Pennsylvania, 05-cv-4754.
[4] Parker v. Google, 04-cv-3918. Google has been targeted by several similar lawsuits, and the issues raised in
Plaintiff's case have been raised by many other Plaintiffs.
[5] Parker v. Comcast High-Speed Internet, 05-mc-157.
[6] Parker v. Wintermute et al., E.D.Pa. #02-cv-7215, and Parker v. LTSC (I), 03-cv-6936.

of Penn in that case, and to somehow view a dismissal based on that type of fraud in a negative light towards Plaintiff would be tantamount to rewarding unclean hands.  Defendant Ross's allegations regarding Plaintiff's litigation history, in addition to being irrelevant to jurisdiction, are not even accurate, and should therefore be stricken from the record.

With regard to the jurisdictional merits of this case, Defendant Ross argues again that he does not have sufficient contacts with Pennsylvania for this court to establish jurisdiction. Plaintiff digresses, for the reasons set forth in his response to Defendant Ross's first motion to dismiss, and in his Amended Complaint.   Contrary to Defendant's argument, Plaintiff avers that Defendant Ross does have regular contacts with Pennsylvania, and "conducts business" routinely with residents of the Commonwealth.  That a "third party entity" such as Straightforward Marketing ships his products for him and processes his orders has little relevance to the issue, since "Speed Seduction" and its related product line, for all intents and purposes, is a "one man show," that show being the man commonly known as "Ross Jeffries," or Defendant Ross.

## II.   <u>FACTUAL BACKGROUND</u>

In the "Summary of Factual Background" portion of his Memorandum, Defendant Ross states:

> The allegations in the Amended Complaint, against Ross, stem from online discussions, supposedly, between Ross and the Plaintiff and the advertising and promotion of Ross' business on the internet. Plaintiff contends that he has been prevented from advertising his own products on a specific internet discussion message board, managed by one of the named defendants, Learn The Skills Corp. ("LTSC"). Thus, the Plaintiff alleges that Ross, together with other of the named defendants, conspired to "hijack" internet traffic though posting links on a free, public access internet message group to LTSC's discussion group, a site to which the Plaintiff was not permitted access. Plaintiff further alleges that other of the named defendants engaged in disparaging comments about the Plaintiff thus culminating in depriving him of business and causing him injury in the amount of $2 billion dollars. See Amended Complaint, Seduction Mafia Overview.[7]

Defendant is combining two separate issues and bases for the Complaint, while mischaracterizing the nature of the allegations.  To wit:

---

[7] Defendant Ross's Memorandum, p.2, ¶ II.

1.    The thrust of the antitrust action relates to USENET rather than the LTSC message boards.  While Plaintiff has argued an antitrust violation against Defendant LTSC over its advertising policies (and Defendant Ross for being an affiliate of LTSC), the antitrust claim against Defendant Ross also relates to the public USENET group alt.seduction.fast ("ASF"), which is neither owned nor operated by LTSC or anyone else.  USENET groups are the internet's "public square," in that they have no owner, and are propagated by news server computers which distribute all messages among themselves, creating a decentralized message board.  Plaintiff has alleged that the publication of an "ASF FAQ" document which refers to Defendant Ross's website as a "main, group-related site" was made in conspiracy with Defendant LTSC for the purpose of claiming this "public square" as the marketing "turf" for Defendants LTSC and Ross to divide among themselves.

2.    The allegations against Defendant Ross do not stem from discussions between the parties, but rather from messages directed at the general public by Defendant Ross concerning Plaintiff.

3.    The allegations against the other defendants include disparagement and defamation at the direction of the Seduction Mafia, but also include far more serious conduct such as direct threats of violence against Plaintiff's person,[8] his business, and his livelihood through general intimidation as set forth in the Amended Complaint, often in violation of the Hobbs and Sarbanes-Oxley Acts, which are predicate RICO acts.

### III.  ARGUMENT

Defendant Ross is being portrayed as a private citizen residing in another state who has absolutely, positively nothing whatsoever to do with the Commonwealth of Pennsylvania or its residents.  In light of the circumstances, this argument is disingenuous at best.  In the course

---

[8] See, e.g,. Amended Complaint, ¶ 117, p. 44, for several death threats from "Player88," believed to be a "fan" of Defendant Ross's named James L. King, from North Carolina.

of earning his livelihood, and conducting commerce, Defendant Ross has regular and ongoing conduct with Pennsylvania residents, many of whom are his customers, seminar attendees, and who receive ongoing communication from Defendant Ross in the form of his monthly newsletter, which is distributed to the "SS List."

**A.**   **Personal Jurisdiction Is Proper**

      **1.**   **Legal Standard For A Motion To Dismiss**.

      Since this motion to dismiss is based on personal jurisdiction rather than failure to state a claim, the citations noted by Defendant Ross apply. The question raised by the instant motion is whether or not this Court has jurisdiction over Defendant Ross for these claims.[9]

      **2.**   **Legal Standard For Personal Jurisdiction**

      Personal jurisdiction can be established over Defendant Ross through any of the following means:

      a.   ***Pennsylvania's long-arm statute*** (42 Pa. C.S.A. A7 5322), which permits Pennsylvania courts to "exercise jurisdiction over nonresident defendants 'to the fullest extent allowed under the Constitution of the United States' and jurisdiction may be based 'on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."[10] In <u>Edeiken v. Bradbury</u>,[11] for example, Defendant's publication of the alleged defamatory material through Internet e-mail, allowing access and publication within the State of Pennsylvania and among Pennsylvania residents, is sufficient to establish a prima facie case of personal jurisdiction under the "tort" prong of Pennsylvania's long arm statute. See, <u>Lofton v.</u>

---

[9] Defendant Ross's Memorandum, ¶ III(A)(1), pp. 2-3.
[10] General Motors Acceptance Corp. v. Keller, 737 A.2d 279, 281 (Pa. Super. 1999).
[11] Lehigh County C.C.P, No. 1999-C-2786.

<u>Turbine Design, Inc.</u> 100 F.Supp.2d 404,409 (N.D. Miss. 2000).  Section 5322(a)(4) of the long

arm statute also provides that:

> (a) General rule.-A tribunal of this Commonwealth may exercise personal
> jurisdiction over a person ... who acts directly or by an agent, as to a cause of
> action or other matter arising from such person: (4) ***Causing harm or
> tortious injury in this Commonwealth*** by an act or omission outside this
> Commonwealth.

The threats made against Plaintiff that were alleged in the Amended

Complaint were designed to cause harm to Plaintiff within the Commonwealth, as was the

general course of conduct designed to interfere with Plaintiff's housing, employment, and his

personal life through the deliberate archiving of messages which include Plaintiff's birth name

rather than his pen name, so that these messages would turn up whenever someone in the

Commonwealth (such as an employer or romantic interest) would "Google" Plaintiff, or type his

birth name into a search engine.

     b.  ***Minimum contacts.***  The "minimum contacts" doctrine is central to

the instant motion.  The general basis was outlined in <u>Edeiken</u>:

> The determination of whether sufficient contacts exist for the assertion of in
> personam jurisdiction is based on a finding that the "defendant's conduct and
> [his] connection with the forum state are such that lie should reasonably
> anticipate being haled into court there." <u>McCall</u>,[12] 650 A.2d at 905, citing
> <u>Kubik</u>,[13] 532 Pa. at 17, 614 A.2d at 1114. Critical to the analysis of whether a
> defendant should reasonably anticipate being haled into court in the forum
> state is the determination that the defendant purposefully directed his
> activities at residents of the forum and purposefully availed himself of the
> privilege of conducting activities within the forum state, thus invoking the
> benefits and protection of its laws.

The most relevant precedent for the instant motion would be <u>Zippo</u>

<u>Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119, 1122 (W.D. Pa. 1997), where that court

engaged in an extensive analysis of internet jurisdictional issues in a manner which clearly favors

the Plaintiff in this motion, and noted:

---

[12] McCall v. Formu-3 Intern, Inc., 650 A.2d 903, 904 (Pa. Super. 1994), alloc. denied, 541 Pa. 640, 663 A.2d 692
(1995).
[13] <u>Kubik  v. Letteri</u>, 532 Pa. 10, 17, 614 A.2d 1110, 1114 (1992).

*The likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet*....If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. E.g., CompuServe, Inc. v. Patterson, 89 F.3d 1257 (6th Cir.1996). (Emphasis Added).

Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper. Burger King,[14] 471 U.S. at 475, 105 S.Ct. at 2183. Different results should not be reached simply because business is conducted over the Internet.... *Defendants who "'reach out beyond one state' and create continuing relationships and obligations* with the citizens of another state are subject to regulation and sanctions in the other State for consequences of their actions." International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159- 60, 90 L.Ed. 95 (1945)

In Maritz, Inc. v. Cybergold, Inc., 947 F.Supp. 1328 (E.D.Mo.1996), the defendant had put up a Web site as a promotion for its upcoming Internet service. The service consisted of assigning users an electronic mailbox and then forwarding advertisements for products and services that matched the users' interests to those electronic mailboxes. Maritz, 947 F.Supp. at 1330. The defendant planned to charge advertisers and provide users with incentives to view the advertisements. Id. Although the service was not yet operational, users were encouraged to add their address to a mailing list to receive updates about the service. Id. The court rejected the defendant's contention that it operated a "passive Web site." Id. at 1333- 34. The court reasoned that the *defendant's conduct amounted to "active solicitations" and "promotional activities" designed to "develop a mailing list of Internet users"* and that the defendant "indiscriminately responded to every user" who accessed the site. Id. at 1333-34.

It should be clear from the Amended Complaint that Defendant Ross engages in activities designed to result in income for him through the sale of products he created, through his internet website. Defendant Ross has not disputed that his products have been marketed and sold to customers in Pennsylvania. Further, in this case, other operatives of the RICO enterprise either resided in Pennsylvania during the time in controversy, or committed relevant acts while in the Commonwealth, or over which the Commonwealth has jurisdiction.

c.   *Nationwide service of process.*   In Rolls-Royce Motors Inc. v. Charles Schmitt & Co., 657 F. Supp. 1040 (S.D.N.Y. 1987), which involved RICO as well as trademark

---

[14] Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183-84, 85 L.Ed.2d 528 (1985)

infringement claims, a district court judge in New York agreed with Rolls-Royce that it had personal jurisdiction over a Missouri car dealership's president, despite the absence of any tort in New York, simply because **RICO allows for nationwide service of process**:

> "When such nationwide service of process is authorized, a federal district count's jurisdiction is coextensive with the boundaries of the United States, [and] due process requires only that a defendant in a federal suit have minimum contact with the United States."

In ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 629 (4th Cir. 1997), for example, the standard for allowing a Plaintiff to claim jurisdiction due to nationwide service of process is that the RICO claims must not be "immaterial or insubstantial." That is clearly not the case here, as Plaintiff is suing over a "Seduction Mafia" whose structure and operation resembles that of any organized-crime outfit.

Additionally, since the predicate acts alleged in the Complaint occurred in part in Pennsylvania (specifically, Defendant Penn's obstruction of justice with regard to Wintermute), the alleged RICO enterprise has engaged in operations in the Commonwealth which also subject it and any of its members to its jurisdiction.

### 3.   Personal Jurisdiction Over The Internet Is Proper In This Case.

Defendant Ross attempts to oversimplify his level of contact with Pennsylvania by stating that "Customers purchase Ross' products online from a third-party entity and not directly from Ross. Therefore, Ross has not shown a repeated and conscious choice to target Pennsylvania residents."[15]  Defendant Ross does not even name this alleged "third-party entity," though it is believed to be Straightforward Marketing, Inc., which is located in Texas.

Plaintiff argues that the "third party" relationship between Defendant Ross and [presumably] Straightforward Marketing is sufficient to sever all claims of personal jurisdiction over Defendant Ross.  However, Defendant Ross neglects to mention that he actively

---

[15] Defendant's Memorandum, ¶ III(A)(3), p. 6.

8

markets the sale of his products himself, and in doing so engages in the same type of activity that would subject him to jurisdiction in the Commonwealth as if he shipped the products himself. Straightforward is little more than an outsourced shipping department for Defendant Ross, whose name is as synonymous with his product line as a singer would be with his or her songs. Defendant Ross derives clear pecuniary benefit whenever his products are sold, and plays an active role in their selling.

Even more compelling as it relates to this case is that Defendant Ross offers a one-hour personal telephone consultation with him for each customer who purchases his Deluxe Home Study Course ("DHSC"). The following screenshot taken from Defendant Ross's website proves this conclusively:



This one-hour telephone consultation is offered by Defendant Ross himself, and therefore constitutes a contractual agreement between Defendant Ross and any customer of the DHSC, thus making Defendant Ross "part and parcel" of every purchase of the DHSC. Under Compuserve, the commercial nature of this contact weighs decisively in favor of Plaintiff and in granting jurisdiction in this case.

a. **Jurisdiction based on e-mail contacts**.

Defendant argues that "e-mail communication, and other forms of electronic communication, do not trigger personal jurisdiction unless they show purposeful availment."[16]  Defendant relies on Toys "R" US, Inc., v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003).  Defendant's argument against personal availment relies on the separation it attempts to create between Defendant Ross and Straightforward, and against that claim Plaintiff argues as above (regarding the one-hour phone consultation and commercial nature of the activity).  However, Plaintiff further argues that  Defendant Ross's contacts with the Commonwealth extend beyond simple e-mail contacts inherent in a "single purchase," and instead that they establish an ongoing relationship through Ross's "SS Newsletter," which he distributes to his customer list, and which constitutes the "repeated transmission of computer files" sufficient to convey jurisdiction as per Compuserve.

B.   **Defendant Ross Has Sufficient Minimum Contacts With Pennsylvania**

Defendant Ross argues primarily on the basis that his products are shipped and sold through a "third party entity" which he refused to name in his Affidavit.  According to his website, that entity is Straightforward Marketing, Inc., in Texas.  Even if this court were to view as true all statements in Defendant Ross's Affidavit, those facts are still insufficient to deny jurisdiction, in light of the following:

All purchases of the DHSC come with a one-hour consultation with Defendant Ross, which means that he himself has entered into part of the purchase agreement. The "third party entity" may host the website, process the orders, and advertise the products, but Defendant Ross also engages in extensive marketing of these same products in his own right, including to

---

[16] Id, ¶ III(A)(3)(a), p.6.

residents of the Commonwealth, and thus purposely avails himself of its jurisdiction. Defendant Ross's internet postings often contain links to his website in his "signature."

Defendant Ross has had contacts with other members of the RICO enterprise, such as Defendant LTSC, who conducts business in Pennsylvania by accepting donations to its website from and through the sale of products to residents of the Commonwealth. Under the joint-tortfeasor theory inherent in RICO, the conduct of Defendants Wolf and Penn further establish contact for the purpose of this action.

      1.   **Defendant Ross's Internet Activity And Purposeful Availment.**

Defendant Ross claims that Plaintiff is asserting jurisdiction based on Defendant Ross's "online discussions with Plaintiff."[17] This is a gross mischaracterization of the nature of the allegations, which relate to Defendant's publication of messages to USENET, rather than his direct communications with Plaintiff. Defendant further claims that Plaintiff has not stated how Defendant Ross's conduct relates to the Commonwealth, yet Plaintiff has outlined this clearly in his Amended Complaint in paragraph 12, where he set forth much of the same factual basis as he does here.

      2.   **Fair Play And Substantial Justice.**

Defendant Ross oversimplifies the matter at hand by claiming that his participation in "heated discussions over the internet" should not create the reasonable expectation that he would be sued in Pennsylvania.[18] Were there no commercial interests at stake, and were the discourse merely "heated," that would be one thing, but in this case, the allegations (which must be presumed true for a motion to dismiss) involve massive libel, trade libel, commercial disparagement, antitrust violations, Hobbs Act violations, a RICO enterprise,

---

[17] Id, ¶ III(B)(1), p.9.
[18] Id, ¶ III(B)(2), p.10.

11

and conduct which includes intimidation of Plaintiff (including by Defendant Ross), and direct threats made against Plaintiff by those acting under the direction of Defendant Ross.

Defendant Ross claims that the discovery burden upon him would be great, but neglects the limitations which already protect him.  To begin with, discovery can be conducted by interrogatory, deposition by written questions, or deposition in his home state of California.  Further, given that Defendant Ross was acting on behalf of his business interests in his product line, he had every reasonable expectation that he might be sued in Pennsylvania.  He has "reached out" to the Commonwealth in search of customers, and maintained relationships with those existing and potential customers through repeated and ongoing contact with residents of the Commonwealth.  The burden on Plaintiff, a man of far fewer means than Defendant Ross, to have to travel thousands of miles to defend himself against the vicious conduct alleged here, would be far greater, and should not be placed upon him, since jurisdiction is proper for the reasons already set forth.

Defendant Ross wants it both ways: he wants carte blanche to interact with Pennsylvania residents for a clearly commercial purpose for which he clearly derives pecuniary benefit, yet he does not want to carry the burden of legal liability that goes along with it.

### C.   Nationwide Service of Process Under RICO.

RICO's statutory provision for nationwide service of process under 18 USC §1965(b) clearly reflects a legislative intent for the broad application of jurisdiction within the United States against any RICO enterprise which has even mild contact within our borders.  This case demonstrates why this intent was wise: Defendant Ross, through his reliance on the other Seduction Mafia operatives.

Defendant Ross argues that nationwide service under RICO would be proper only if the minimum-contacts standard is met, yet this would make §1965(b) superfluous, since it

would never be necessary to invoke in a case where jurisdiction was already established by other means. That moves the argument to Defendant Ross's other claim, that the RICO allegations are "insubstantial." Once again, Defendant attempts to frame the allegations as relating to little more than "heated discourse" over the internet. He also claims that Plaintiff has failed to allege predicate acts.[19] Both claims are wholly disingenuous, as Defendant Ross would like to have this court believe that "heated discourse" encompasses the following:

1.    Defendant Ross, who is not a licensed attorney, urging other defendants to move this court for a psychiatric examination pursuant to Rule 35.[20]

2.    Defendant Ross claiming that Plaintiff had sent a threatening e-mail (in violation of federal law) to a "Jeri Ryan," relying solely on the word of an anonymous poster whose statements he could not possibly have verified the accuracy of.

3.    Threatening Plaintiff with "government contacts" including a "Mr. B." from the NSA.[21]

4.    Claiming a public USENET group as his personal property and giving himself a "right to SPAM" the group through a bogus "FAQ" document clearly designed to confuse the public, and for an anticompetitive purpose in violation of antitrust laws, while encouraging and directing third parties to commit predicate acts against Plaintiff in violation of the Hobbs Act, through the use of extortion to interfere in commerce.

Under the aiding-and-abetting theory of 18 USC §1962(d), Defendant Ross would also be liable for the predicate acts of other operatives, which are outlined extensively in the Amended Complaint, including the death threats and other intimidation and retaliation designed to induce Plaintiff to vacate the USENET group and surrender any revenue he would

---

[19] Id, ¶ III(C), p.11.
[20] Amended Complaint, ¶50(a), p. 14.
[21] Id, ¶52, p. 16.

derive from his participation in that group, with the revenue then winding up with Defendant Ross (and others) instead.

Plaintiff has outlined a classic organized-crime operation of the exact nature that RICO was designed to enjoin. Defendant Ross claims that there is no attempt to "hijack" the ASF traffic because "no one is forced to visit any particular website, but does so of their own free will."[22] This argument is disingenuous because Plaintiff is referring to "hijacking" through illegal marketing, much the same way that one might "hijack" physical traffic to a public park by claiming that the Park is "closed" and directing visitors to a private park where one charges admission. No one is forced to visit the private park, but that does not absolve liability related to the marketing. The deceptive nature of the "ASF FAQ" document, the declaration of "open season" on Plaintiff through the encouragement of the third-party conduct cited by the RICO operatives, and the continuation of the marketing with the full knowledge and acceptance of its attempted "enforcement" all underscore the very substantial nature of the well-pled allegations, which if true, as they must be presumed for the purpose of a motion to dismiss, would clearly entitle Plaintiff to relief.

Defendant Ross finally argues that only Defendant Penn is located in the Commonwealth.[23] He claims that he knows of no contacts between Defendant Wolf and the Commonwealth, yet Defendant Wolf is licensed to practice there. Defendant Ross has also had extensive contacts with Defendant LTSC, who receives donations from Pennsylvania residents and markets products to them, so those contacts would further suffice. Finally, Defendant Ross claims that Plaintiff has not addressed the claims raised by Defendants Wolf or Penn regarding attorney immunity or res judicata, yet his Amended Complaint has done just that, while any response to a future motion to dismiss will do so as well.

---

[22] Defendant Ross's Memorandum, ¶ III(C), p. 11.
[23] Id.

14

## IV.  <u>CONCLUSION</u>

For the reasons averred herein, the instant motion should be **denied**.  Further, even if the motion were granted, dismissal should not be with prejudice, since the claims would be valid in at least one other jurisdiction.  The first two sentences of Defendant's Introduction in his Brief should also be stricken from the record as inflammatory.  An appropriate form of order is attached.

This the 1st day of December, 2005.

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
GordonRoyParker@aol.com
Plaintiff, Pro Se

15