

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon,** d/b/a **Snodgrass Publishing Group**, 4247 Locust Street, #806 Philadelphia, PA 19104 | : : : : : | |
| Plaintiff, | : | **CASE NO.: 05-cv-2752** |
| v. | : : | |
| **Learn The Skills Corp.**, et al. | : : : | **Hon. Harvey Bartle, III** |
| Defendants. | : | |

## ORDER

AND NOW, this ___ day of _____, 2006, in consideration of Defendant

Trustees of the University of Pennsylvania's Second Motion To Dismiss, and all responses

thereto, the motion is **denied.**  A memorandum opinion is attached.

SO ORDERED.

_____
J.





## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. Ray Gordon d/b/a **Snodgrass Publishing Group**, 4247 Locust Street, #806 Philadelphia, PA 19104 | : : : : : : : : : : : : | |
| Plaintiff, | | **CASE NO.:** 05-cv-2752 |
| v. | | |
| **Learn The Skills Corp.** et al. | | **Hon. Harvey Bartle** |
| Defendants. | | |

**FILED**

**DEC 0 5 2005**

**MICHAEL E. KUNZ, Clerk**
**By** _____ **Dep. Clerk**

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA'S SECOND MOTION TO DISMISS

**Plaintiff** Gordon Roy Parker, in the above-styled action, submits this response to Defendant's Motion To Dismiss and Memorandum in support thereto.

### I. INTRODUCTION

Defendant Penn relies on its previous Motion To Dismiss, stating that "no new claims" were raised. However, Defendant ignores that the Amended Complaint sets forth the additional factual basis for the injurious misrepresentation claim, namely Penn's representation to Plaintiff on April 22, 2004 that it could not identify Wintermute.[1] This is in addition to Plaintiff's other claims, and his response to the instant motion that the evidence of the fraud was not uncovered until much later, thus causing that claim to be timely. The RICO claim is covered by a different statute of limitations, and the underlying facts in the fraud claim

Defendant Trustees of the University of Pennsylvania ("Penn" or "Defendant") have moved to dismiss this case on the grounds of failure to state a claim pursuant to Federal Rule 12(b)(6) and failure to state with specificity pursuant to Rule 9(b), as well as failure to state a claim for

---

[1] Amended Complaint, ¶ 101, p. 40. Plaintiff had referred to this date as April 14, 2004, but that should read "April 22, 2004" throughout. Plaintiff apologizes to the court for the error.

fraud which they also claim is time-barred.  Defendant finally claims that claims based on the

allegation of perjury at the February 12, 2003 hearing are estopped because they have already

been litigated.[2]

## II.  DEFENDANT'S ALLEGED "UNDISPUTED FACTS"

Plaintiff contests the following alleged "undisputed facts":

1.    Defendant claims, that the allegations surrounding the charge of perjury were

"already litigated." [3]  They were most definitely not, as the motion to compel the production of

documents was **denied as moot** by Judge Kelly.[4]  The motion was moot because the time limit

for service had expired, and no extension was being granted.  Penn's testimony had absolutely

nothing to do with the dismissal, and because the case was dismissed, Wintermute's identity was

no longer germane.  The "merits" of the subpoena were never explored, nor did they have to be.

It should also be noted that, at the time of the hearing, Plaintiff had not found the evidence he

would later discover that shows that Penn maintains a very detailed history of IP assignments

through its "IP Change History Database," and it does not permit anonymous assignments due to

"billing and network issues."  That new evidence alone would destroy any estoppel.

2.    Defendant then claims that "noticeably absent [from the Amended Complaint],

however, are any specific factual allegations that any employee, representative or agent from

Penn communicated with 'Wintermute' or 'Osgaldor Storm.'  Indeed, plaintiff attaches no e-

mails or other written communications to the Complaint, and provides no dates, times, or events

to substantiate any of his claims against Penn."  Aside from evidence not being necessary under

---

[2] Defendant's brief, p.1.
[3] Id.
[4] A copy of the order dismissing Parker v. Wintermute is attached as Exhibit A and incorporated by reference as if
fully stated verbatim herein.

notice pleading, this is not the case, as paragraph 95 of the Amended Complaint shows that

Detective Blackmore (who worked for Penn) had communicated directly with Wintermute:

> ***Detective Blackmore initially told Plaintiff that he had spoken to Wintermute*** and
> warned him to cease and desist, and that Wintermute had agreed to do this.  On
> September 15, 2001, Wintermute posted to ASF, a message confirming that he was
> "instructed not to speak to [Plaintiff].   (Amended Complaint, ¶ 95, p. 39).[5]

3.     The basis for the charge of conspiracy with Wintermute was his September 15,

2001 posting to the alt.seduction.fast ("ASF") USENET newsgroup, where he posted that he

"had been instructed not to speak to" Plaintiff.  This was consistent with what Plaintiff alleged in

¶ 95 of the Amended Complaint.  The actual posting was not included as an exhibit, as including

all of the exhibits from the flood of postings that will comprise the evidence in this case would

have made the Amended Complaint hundreds of pages.  Following is the full text of that post,

with the Message-ID and NNTP posting-host indicating it was from the Penn system:

> From: Wintermute <wintermute@spamsux.lycos.com>
> Newsgroups: alt.seduction.fast
> Subject: Re: Everyone speaks for Winterpuke except himself....
> Date: Sat, 15 Sep 2001 22:13:51 -0300
> Organization: University of Pennsylvania
> Lines: 22
> Message-ID: <MPG.160dd4ed51b8f3e89897a5@netnews.upenn.edu>
> References: <20010915213416.28880.00000315@mb-mm.aol.com>
> **NNTP-Posting-Host: wlt-102-199.greeknet-student.upenn.edu**
> X-Newsreader: MicroPlanet Gravity v2.50
>
> I was instructed not to speak to you yes.  It is a good use of my time.
>
> In article ,
> betforaliving@aol.com says...
> > Notice that, folks?
> >
> > Bet he's not laughing about now...........
> >
> >
> > Ray Gordon, Author
> > The Nice-Guy Graveyard: Where men go to bury their kindness and be the jerk
> > women love
> > http://www.cybersheet.com/library.html
> >

---

[5] It should be noted that Plaintiff has now added Message-ID numbers for each USENET posting cited in the
Amended Complaint.

--
Wintermute *** RAFC
wintermute AT lycos DOT com

New to this newsgroup?  Start here:
http://www.fastseduction.com/asf-faq.shtml

4.     Regarding Osgaldor Storm (whose identity as the author of the message was confirmed via discovery of Alltel), Plaintiff alleged specific facts supporting a conspiracy in paragraph 107 of his Amended Complaint, and alleging that Dr. Storm had been "put up to" threatening Plaintiff.  The paragraph states:

> In April 2003, a man later identified through discovery as Osgaldor Storm (a Seduction Mafia operative from the NLP community) began threatening Plaintiff's life repeatedly.  In a message dated April 15, 2003, Dr. Storm stated that he had previously worked for Penn and that Penn in fact had "put him up" to making the threats. (Amended Complaint, ¶ 107, p. 41).

5.     Since Defendant insists, Plaintiff will now include the entire post, with headers, which supports his claim for conspiracy (the quote "I used to work for UPenn and it was them who put me up to joining this newsgroup" is highlighted in ***bold italics*** below):

> Subject: Re: Ray gets ASF death threat; investigators to get names of "group" that incites
> Path: lobby!ngtf-
> m01.news.aol.com!ngpeer.news.aol.com!cyclone1.gnilink.net!wn14feed!wn13feed!worldnet.att.
> net!216.166.71.14!border3.nntp.aus1.giganews.com!nntp.giganews.com!NetNews1!attsl2!ip.att.n
> et!news.alltel.net!53ab2750!not-for-mail
> From: "Don" donjuan@nlp-nhs.org
> Newsgroups: alt.seduction.fast
> References: <20030415055615.01379.00000746@mb-fa.aol.com>
> Lines: 304
> X-Priority: 3
> X-MSMail-Priority: Normal
> X-Newsreader: Microsoft Outlook Express 6.00.2600.0000
> X-MimeOLE: Produced By Microsoft MimeOLE V6.00.2600.0000
> Message-ID: <elVma.8634$Dd4.3007999@news.alltel.net>
> Date: Tue, 15 Apr 2003 15:14:18 GMT
> NNTP-Posting-Host: 162.39.198.182
> X-Complaints-To: abuse@alltel.net
> X-Trace: news.alltel.net 1050419658 162.39.198.182 (Tue, 15 Apr 2003 10:14:18 CDT)
> NNTP-Posting-Date: Tue, 15 Apr 2003 10:14:18 CDT
>
> ROTFLMAO!!!!!
>
> God you get me SO FUCKING HOT, Gordon!

4

Knock yourself out!  File and list every single poster to this group because that seems to be the scope of the people who believe you are genuinely mentally ill!  And have another beer while you're at it because the judge is going to have some very interesting things to say to you right before he orders you remanded for psych evaluation!  When it happens, I will GLADLY fly over from the UK to present MY EVIDENCE that you are A DISGUSTING FRAUD, A CHILD MOLESTING ALCHOLIC who has threatened me repeatedly, and who poses a continuing and ongoing threat to himself and others!

When WAS your last suicide attempt, Ray?  And you never told me if it was Tegretol or Stelazine.

Oh no, wait a moment.  Gordon, I have to confess something to you.  In all fairness, you should know that I have previously been ruled "Non compos mentis" and I really can't testify to anything.  I'm just too mentally unstable, and with my history of violent outbursts, I'm afraid I'm not welcome in many courtrooms.  Can you *really* be sure that I'm NOT hiding in your closet when you go to bed tonight?  But what do I know?  I'm just some loser who's read a couple a' books.  *I used to work for U Penn and it was actually them who put me up to joining this newsgroup.*  But then, I think it's possible that certain people may have already paid DOZENS of people to go after you, meticulously, methodically, and WITHOUT MERCY.  Isn't it true that you are aware that your house is under surveillance?  But you aren't yet aware that there are people following you?  Have you noticed your computer is not acting quite "right" recently?  Do you know how easily an anonymous person from overseas can get into your computer while you're online?  And you'd never even have known about it until it's way too late, isn't that what they say.  Virus and history kill software don't prevent people of spoofing IP's and easily slipping into your system without even the slightest hint of your detection.  Look above you Ray.  What do you see that could easily have a concealed camera in it?  Have you noticed how easy it is to find people here who wish you ill, people who are close enough that it would be a simple matter to "visit" your home?  Your mom is a nice lady, and she's very forthcoming with polite young ladies who ask seemingly innocuous "survey questions".  Did you know there may be people RIGHT HERE ON THIS LIST who may know people WHO HAVE BEEN *INSIDE* YOUR HOUSE?  It's true!  There may very well be such people.  Of course, I'm just writing about a general topic, not writing about anyone specific, I wouldn't want to seem disingenuous, that would be AN INEXCUSABLE FAILURE on my part to *be a responsible member of this online community*.

Btw, Gordon, you never answered ANY of my questions.  Why is that?  Could it be that I already know the answers, and you KNOW that I know?

I'm a little surprised that you haven't gotten my phone number yet, Gordon.  How can you insult me if you don't do your homework?

Or are you afraid of what you will find at the other end of that telephone?  You really needn't fear the inevitable, Gordon.  You really needn't.  ;-D

And thank you for being so entertaining during your remaining days, you SEXY BEAST you!

Now run along and file your lawsuits and leave these nice people alone.  :-D

24 days, Gordon.  Can you feel it? ;-)

Don

6.   Osgaldor Storm was previously alleged to have furthered the RICO enterprise by

linking to the "RayFAQ" website.  According to his own posting, Penn "put him up to" joining

5

the newsgroup and threatening Plaintiff's life repeatedly. Penn never sued Dr. Storm for

defamation despite being offered his contact information by Plaintiff in April 2004. Plaintiff

further alleged that this was a violation of the Sarbanes-Oxley Act (18 USC §1513 (e)) because it

was an attempt to interfere with Plaintiff's employment (by conveying to the public that Penn

would rather kill him than hire him in addition to defaming him) in retaliation for his having

reported the federal crimes alleged against Wintermute.

   7.  Paragraph 101 of the Amended Complaint specifically references actions taken

by Defendant Penn on [April 22, 2004], when it once again repeated the claim that it had no

information with which to identify Wintermute.

   Penn's characterization of these "undisputed facts" is questionable at best. Its

characterization of the perjury issue having been "previously litigated" is even more dubious. A

motion denied as moot has not been litigated on the merits, and the existence of the new

evidence makes

### III.  LEGAL STANDARD

   Penn "rounds up the usual citations" and describes the standard for granting a motion

to dismiss (light most favorable to the Plaintiff, etc.), and concludes by saying that: "Here, the

[Amended] Complaint contain no facts, details or assertions whatsoever that resemble viable

claims against Penn. Accordingly, plaintiff's claims must be dismissed." Weighing in Plaintiff's

favor is the judiciary's general reluctance to grant motions to dismiss and "short circuit" the

litigation process. Only when it is clear that even if all allegations in a complaint are true, that

Plaintiff would not be entitled to relief, does it then become proper to grant a motion to dismiss.

   Plaintiff digresses: he has alleged a "mafia" which uses organized-crime tactics (i.e.,

RICO violations) in order to secure market share in the seduction arena of the internet market for

how-to websites, books, and other products and services.  He alleged that Wintermute acted in furtherance of that mafia by threatening Plaintiff in violation of the Hobbs Act, and that Defendant committed the predicate act of obstruction of justice in violation of 18 USC §1511, which is also a predicate RICO act, as well as interfering with Plaintiff's employment in violation of the Sarbanes Oxley Act (18 USC §1513(e).  Plaintiff further alleged a conspiracy to threaten him among Penn and Osgaldor Storm, and would be entitled to relief under the most favorable light standard.  The motion to dismiss should therefore be denied.

## IV.  ARGUMENT

**A.**   **Plaintiff's state-law claims are not time-barred due to 1) their continuing nature, including identical or similar timely acts; 2) equitable tolling due to fraudulent concealment and discovery of injury; 3) good cause; and 4) the Amended Complaint.**

**1.**   **The fraud is ongoing and includes acts which fall within the statute of limitations.**

Defendant's own stating of the first element of fraud explain why the conduct must be considered ongoing: "1) a false representation of an existing fact or nonprivileged failure to disclose."  Penn had a duty to Plaintiff to inform them that they could have located Wintermute.  That duty is ongoing.  Penn could have turned over Wintermute's identity (or documents sufficient to identify him), or they could have informed Plaintiff that they were in possession of this information, but have not to the present.  Thus there has been a repeated "failure to disclose."

The above argument would be sufficient, but it is not even necessary, as Penn repeated its fraud on April 22, 2004, when it made the same claims in its response to a subpoena duces tecum in Parker v. Learn The Skills Corp. (E.D.Pa. #03-cv-6936).  That motion was not ruled upon, and became moot when the Complaint against Wintermute was dismissed **without**

**prejudice** on August 11, 2004.  Penn took this opportunity to badger Plaintiff yet again by saying things such as:

> Penn has a strong interest in keeping the names and addresses of its graduates out of the hands of persons such as Mr. Parker.....***Penn has repeatedly informed Mr. Parker that no information is available from which the identity of the senders of the emails in question could be determined.*** This is true even if Penn were ordered to supply the requested information. At the February 12, 2003 hearing on the first subpoena, Penn employees provided under oath the evidence establishing Penn's inability to identify the senders of the emails. Penn has documented that it does not have the information Mr. Parker seeks. Still, Mr. Parker persists in requesting, again and again, the same information from Penn - even in unrelated discovery proceedings. Rule 45 was designed to protect  subpoena recipients, especially third-party subpoena recipients, from this is the sort of harassing discovery.
>
> The Court should not enforce the subpoena but rather should quash it because the requests for names and addresses of Penn students is improper and overbroad, and the remaining request for information about the identity of senders of emails has already been answered repeatedly and is harassing.[6]

Penn's claims above regarding the hearing of February 12, 2003 again fail to acknowledge that the motion to enforce that subpoena was denied as moot, not because Penn had conclusively established that it did not have Wintermute's identity.  While ignoring the record, Penn gratuitously uses its invalid premise to lambaste Plaintiff and draw unfounded legal conclusions about whether or not Wintermute could have been identified from the documents sought by Plaintiff, while questioning Plaintiff's motives for seeking the information.  Under the most-favorable light doctrine, it has to be presumed for purposes of this motion that Plaintiff is correct in that the testimony and related statements were false and that the conduct was fraudulent.

Plaintiff did not intend to avoid including evidence with his Amended Complaint, but rather wanted to ensure that it was concise, a daunting task in a RICO action involving dozens of predicate acts alone, against six defendants.  As it was, the Amended

---

[6] Response to Motion to Enforce Subpoena, ¶ VII, "Conclusion," p. 8.  The full response is attached hereto as Exhibit B and incorporated by reference as if fully stated verbatim herein.

Complaint ran 75 pages, and as the exhibits to this motion show, to include all documentation with a "notice pleading" complaint would have been impractical.

     2.    **Equitable Tolling.**  The equitable tolling doctrine is well established:

> The equitable tolling doctrine provides that it "may be appropriate [to toll the limitations period:] (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." (Flint v. Philadelphia, E.D.Pa. #98-cv-95, 1998).

     In this case, Plaintiff had raised the issue of fraud based on this conduct in <u>Parker v. University of Pennsylvania</u> (E.D.Pa. #02-cv-567), where he cited it as the basis for a retaliation charge. During discovery, Penn repeatedly misled Plaintiff regarding Wintermute's identity. The first requirement above is therefore satisfied and any claims of time-barring should be destroyed by the equitable-tolling doctrine.

     3.    **Good Cause.**  The circumstances set forth in paragraphs 1-3 above, collectively constitute good cause. Further, good cause is not necessary due to the actions of April 22, 2004 cited above and the fact that Plaintiff had pled a "continuing" violation of the tort.

     4.    **Amended Complaint.**  Paragraph 101 of the Amended Complaint sets forth an allegation of fraud which occurred "on or around April [22], 2004," and which is therefore timely for the injurious misrepresentation claim and for the charge of aiding-and-abetting the RICO enterprise.

**B.**    **<u>The Amended Complaint Complies With Federal Rule 9(b)</u>**

     Defendant argues that Plaintiff has not complied with Federal Rule 9(b), which requires that fraud must be pled with specificity. (Defendant's Brief, ¶ 4(B), p.6). It claims in its motion that Plaintiff's "allegation of fraud as to Penn is a one-sentence paragraph (¶ 237) in a Complaint seventy-four (74) pages in length. It the cites the specific allegation, but Penn also ignores other parts of the Amended Complaint where Plaintiff set forth more specificity.

Plaintiff has specified the fraudulent claim: that Detective Blackmore had spoken with Wintermute and knew who he was. The fraud occurred when Detective Blackmore (and Penn's attorneys, on Penn's behalf) repeatedly claimed, in correspondence, pleadings, and testimony), that it could not identify Wintermute. The exact wording follows:

> 165. Defendant Trustees of the University of Pennsylvania committed separate predicate acts of obstruction of justice as follows:
>
>     a. By refusing to identify Wintermute in its reply to Plaintiff's Motion To Enforce A Subpoena Duces Tecum on or about December 18, 2002.
>
>     b. *By fraudulently testifying in court* on February 12, 2003 that it had no knowledge of Wintermute's identity, despite a prior admission by Detective Blackmore that it did.
>
>     c. By *continuing to defraud Plaintiff* by claiming it could not locate Wintermute, including but not limited to its discovery responses on or around April [22], 2004.[7]

Plaintiff was sufficiently explicit in identifying the circumstances surrounding the fraud. Alternatively, Plaintiff argues that any alleged defects can be fixed by Amendment.

Defendant's claim in its motion that it was not put on notice of the times or "precise misconduct with which they are charged"[8] also fail or can be cured by amendment.

Defendant's Motion To Dismiss the fraud and conspiracy claims should therefore be denied. To the extent that the negligence claims are not addressed by the arguments against the fraud claim due to the lower standard of proof, the negligence claim should survive regardless since no specific argument in support of dismissing it was made.

### C. Plaintiff Has Alleged Predicate RICO Acts by Penn And Does Not Even Need To Under 18 USCA §1962(a).

Defendant relies on the doctrine of estoppel to argue that the averments relating to Wintermute have been "previously decided by other courts to the dissatisfaction of Plaintiff."

---

[7] Id
[8] Defendant's Brief, ¶ IV(B), p.7

1.   **The Issue Was Not Previously Litigated.**  As Plaintiff has shown, and as the attached order dismissing <u>Parker v. Wintermute</u> shows, the issue of perjury has ***never*** been decided on the merits.  The motion to enforce the subpoena for Wintermute's identity was **denied as moot**, and nothing in the record supports Defendant's claim that the merits of Penn's testimony were litigated.

2.   **New Evidence Destroys Estoppel.**  The evidence that uncovered the fraud was not discovered until after the February 12, 2003 hearing, and after the <u>Wintermute</u> case had been dismissed.  The existence of new evidence alone destroys any estoppel, but that is not necessary here since there was no legitimate claim to estoppel in the first place, as the claims have never been litigated.

3.   **The Issue of Perjury Is Irrelevant To The Sarbanes-Oxley Claims**.  The Sarbanes-Oxley Act, 18 USC §1513(e), states that:

> Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, ***including interference with the lawful employment or livelihood of any person,*** for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.

Offenses under this act are predicate RICO acts, and require only a retaliatory intent which is irrelevant to the disposition of the <u>Wintermute</u> subpoena.  The allegations against Osgaldor Storm included an allegation of a violation of Sarbanes-Oxley, as Penn had allegedly "put up" Dr. Storm to threatening Plaintiff.  Considering that Defendant had threatened to sue Plaintiff under the Dragonetti Act for a perceived violation of its rights,[9] that it would not sue Dr. Storm for defamation (i.e., accusing Penn of effectively "putting out a hit" on Plaintiff) is incredulous.  This act of omission left the public with the impression that Penn, either formally or with "wink and nod" approval, sanctioned Dr. Storm's conduct.

---

[9] Amended Complaint, ¶ 80, pp. 30-31.

Obstruction of justice (18 USC §1511) is a predicate RICO act for a good reason: its consequences are far-reaching, and it is a common mafia tactic. "Wintermute" had been recruited by a group of online "thugs," a "seduction mafia," to defame and harass Plaintiff, in part precisely because he was located at Penn, so as to give the impression that Plaintiff could not even prosecute someone "in his own back yard."

Had Penn simply identified Wintermute (as Detective Blackmore had said that he had, confirmed by Wintermute's posting that he had been "instructed not to speak to Plaintiff"), they could have remained neutral in this action, and Plaintiff would have been able to conduct discovery of and take testimony from Wintermute that could have stopped the Seduction Mafia in its tracks. Instead, Penn chose to obstruct justice by concealing his identity, and only because of Plaintiff's research in his discrimination lawsuit, and Wintermute's choosing to reveal loads of personal information about himself, was Plaintiff later able to locate his identity without Penn's IP records. Rather than doing what any neutral law enforcement officer would have done and secure his name, Penn then claimed that Plaintiff was seeking improper discovery, when all he has been trying to do is properly subpoena information which would lead to the discovery of the identity of a Penn student who had threatened him online and who was repeatedly defaming him.

4.    **Predicate Acts Pled.** Plaintiff has pled multiple predicate acts against Penn in his Amended Complaint. They include:

1.    Multiple Violations of 18 USC §1511 for obstruction of justice, with each misrepresentation regarding Wintermute constituting a wholly separate predicate act.[10]

2.    Violations of Sarbanes-Oxley, 18 USC §1513(e), for interfering with Plaintiff's employment in retaliation for his having reported a federal crime (by Wintermute) to

---

[10] Amended Complaint, ¶ 165, p. 59.

law enforcement (Detective Blackmore).  It also incorporates the allegations against Osgaldor Storm, as he claimed to have been "put up to" his conduct by Penn.

5.   **Pleading Predicate Acts Not Necessary Under 18 USC §1962(d)**

Even if this Court were to find that no predicate acts by Google were committed, this would not preclude liability under §1962(d).  Google's assertion that it must commit predicate acts to be liable, fail under the light of <u>Beck v. Prupis</u>, No. 98-1480, 2000, where the United States Supreme Court held:

> "Under our interpretation, a plaintiff could, through a §1964(c) suit for a violation of §1962(d), *sue co-conspirators who might not themselves have violated one of the substantive provisions of §1962."* (Emphasis Added).

<u>Beck</u> is unambiguous: predicate acts are simply not required to establish RICO liability for aiding and abetting under 18 USC §1962(d).  Penn, having been put on notice of exactly how the RICO enterprise was harming Plaintiff, chose instead to assist that enterprise. Plaintiff has pled a blatant conspiracy (the "Seduction Mafia") with a clearly defined economic purpose (to gain customers for "seduction gurus" within the Mafia), and who engaged in violations of the Hobbs Act (extortion), with peripheral violations of other acts (18 USC §1030(a)(7), relating to threatening a protected computer, 18 USC §1511 and §1513, relating to obstruction of justice and interference with employment in retaliation for reporting a federal crime, and the "primary" violations of the Hobbs Act).

D.   **Plaintiff's Civil Conspiracy Claims Do Not Fail**

To the extent that Penn has argued that the civil conspiracy claim fails because the fraud claim fails, Plaintiff has argued in paragraph C) above why that argument should fail.

To the extent that Penn argues that Plaintiff has not pled a claim for civil conspiracy, he has already set forth how he argued that Wintermute and Penn conspired to commit fraud against him repeatedly during the times in controversy, as part of a "continuing" violation, such

as with the timely acts of April 22, 2004, when Penn again obstructed Plaintiff's ability to identify Wintermute.

Penn attempts to characterize the civil conspiracy count as a "civil claim for perjury," and provides typical citations which indicate that one cannot sue for civil conspiracy in Pennsylvania unless the underlying acts are actionable in a civil suit. Since Plaintiff is alleging conspiracy based on fraud, which is actionable, this argument is irrelevant.

To support its claim, Defendant cites Homer v. Chiamacco, 2 Pa. D. & C.3d 7 55, 7 5 (1977). Aside from pointing out that Homer is not even binding on this court, the key citation shows what separates this case from Homer:

> "The true import of plaintiff's instant action lies...in the attempted reevaluation of testimony which has already been found sufficiently credible to extinguish all reasonable doubt."

Given that the merits of the testimony in controversy were never adjudicated, but rather that the underlying motion was denied as moot, there is no way to claim that "all reasonable doubt" has in any way been "extinguished" here. The fraud alleged here extends beyond perjury, as the misrepresentations were made repeatedly to Plaintiff long before he subpoenaed the information. To the extent that this does bar a civil action for fraud, a criminal complaint would be Plaintiff's only option, one he has eschewed because of a desire on the part of law enforcement not to become "discovery units" for civil litigants.

Perjury, by itself, would not give rise to an action for fraud, as one must also prove economic harm. There are also cases where something which is not actionable in and of itself (such as assault without a conviction) might be actionable in a civil case (such as a personal-injury claim based on the assault from a guest of the owner of the premises on which it occurred). Plaintiff seeks an action not for the perjury itself, but for the greater scheme of fraud of which it was a part.

14

The remainder of this argument by Penn indicates that Plaintiff has not alleged agreement between Wintermute and Penn to commit fraud, yet the facts make clear that this is exactly what he is alleging: Wintermute sought "protection" from Penn by having his identity concealed, got it, was reassured that Plaintiff could not locate him, continued to taunt Plaintiff over this, and indeed, could not be located or served as a direct and proximate result of the conduct.  Plaintiff suffered massive damages as a result of this fraud, in the form of a dismissed RICO lawsuit due to lack of service caused by the very fraud alleged here.

### E.   <u>Plaintiff Has Stated A Claim For Fraud.</u>

Defendant's arguments will be addressed sequentially:

**1.**   <u>No Estoppel.</u>  Defendant again claims that Plaintiff is estopped from raising a claim for fraud based on Detective Blackmore's testimony, and claims that "Plaintiff relies solely on the testimony of Detective Blackmore at the February 12, 2003 judicial hearing as proof positive of a fraud."[11]  This is incorrect, as Plaintiff was merely pleading a complaint, not preparing for trial.  He did Amend the Complaint to include a specific timely allegation, but had also alleged in the original and Amended Complaint a "continuing fraud",[12] and under the most-favorable-light standard, this allegation must be presumed true for this motion.  The estoppel argument is refuted by the record: the motion to compel the <u>Wintermute</u> subpoena was denied as moot, and both cases were dismissed **without prejudice** on procedural grounds.  The issue was never adjudicated on the merits, and no court has held that Penn's testimony was true.  Defendant's Motion should therefore be denied.

**2.**   <u>Detective Blackmore's Testimony Has Not Been "Litigated."</u>  Plaintiff has argued that the underlying issue in the alleged fraud has never been "litigated" so it doesn't need

---

[11] Defendant's Brief, ¶ IV(E), p. 12
[12] Amended Complaint, ¶ 165, p. 59

to be "relitigated," but further argues here that the issue is properly raised due to the new

evidence uncovered subsequent the February 12, 2003 hearing:

> Defendant also claims that:
>
>> "Second, as noted above, plaintiff has not alleged any additional facts, with any degree of specificity, to move this Court to "re-litigate" his claim that Detective Blackmore (who is not a named defendant) gave conflicting information at the hearing."[13]
>
> The Amended Complaint, quoted below, shows that this is not correct.
>
>> While researching <u>Parker v. University of Pennsylvania</u>, Plaintiff uncovered compelling evidence that the Wintermute messages were in fact easily traceable, known to Penn all along, and that the IP addresses from which Wintermute posted did not change over periods of several months.[14]
>>
>> ***Since that hearing, several key pieces of information about Wintermute have come to light,*** including: a) he graduated in 2004, with a major in engineering and a minor in mathematics; b) he posted his height, age, weight, and other information about himself; c) he posted his own picture and that of his girlfriend in a "seduction conquest" section of a "pickup" website (<u>www.auseduction.com</u>) which is similar in nature to and affiliated with the LTSC website; d) his hometown address (which Penn has) is located in the state of Massachusetts; and e) Since graduating, he has moved to Austin, Texas and works a full-time job.[15] (Emphasis Added).
>
> The timeline of stated events shows that evidence supporting these factual

averments (such as Wintermute's post-graduation employment in 2004) were not available to

Plaintiff at the time of the hearing on February 12, 2003.  As was not the case in February 2003,

Plaintiff now has alternative means of identifying Wintermute, and this makes it possible to

perpetuate testimony from Wintermute which would prove these averments.

### 3. <u>Plaintiff Has Specifically Alleged That Detective Blackmore Had Wintermute's Identity:</u>

> Third, plaintiff has not provided any specific facts that Detective Blackmore knew the identity of Wintermute. Interestingly, plaintiff relies on a statement by the "mafia operative" Wintermute (who plaintiff previously sued) that was allegedly posted on a web-site, which plaintiff conveniently failed to attach to his Complaint

---

[13] Defendant's Brief, ¶ IV(E), p. 12
[14] Amended Complaint, ¶ 100, p. 40.
[15] Amended Complaint, ¶¶ 103(a-e), p. 40.

and now asserts was defamatory to his character and has caused him great pain and anguish. See Exhibit "A," ¶ 83.[16]

A simple reading of the Amended Complaint refutes this argument:

> ***Detective Blackmore initially told Plaintiff that he had spoken to Wintermute*** and warned him to cease and desist, and that Wintermute had agreed to do this. On September 15, 2001, Wintermute posted to ASF, a message confirming that he was "instructed not to speak to [Plaintiff].[17] (Emphasis Added).

It should be self-evident that in order to speak to Wintermute, as Detective Blackmore had claimed to Plaintiff, he had to have identified him first.

4.    **"Defamatory Hearsay."**   Defendant concludes with an argument based on communications made by Wintermute and/or other operatives to Penn in response to his reporting the threats by Wintermute:

> Lastly, plaintiff states that "[Detective Blackmore] backed off once he realized that all he had was *defamatory hearsay*." (emphasis added) [Complaint] at ¶82. Yet, plaintiff now hurls similar disparaging allegations against Penn and Detective Blackmore that, given the sparse allegations of the Complaint, originated from a web-site that can be characterized as none other than hearsay. Given the above, the undisputed facts clearly establish that plaintiff has not sufficiently pled a claim of fraud as against Penn.[18]

Defendant appears not to know the difference between USENET and a website. USENET message boards are not part of the world wide web ("WWW"), but instead are decentralized message-boards which are carried by "news servers" who trade messages for each "newsgroup" they carry. All messages for a newsgroup wind up on all servers which carry that group. Penn runs its own USENET server, and allows its students to post to USENET. The only way to identify the author of a message from a Penn student is through the discovery methods Plaintiff used, but which still failed due to the fraud.

---

[16] Id.
[17] Amended Complaint, ¶ 95, p. 39.
[18] Defendant's Brief, ¶ IV(E), p. 12

Penn simply miscalculated when it committed this fraud because it did not envision Plaintiff uncovering the contradictory evidence relating to the IP Change History Database,[19] and it certainly did not envision Wintermute "pressing his luck" by posting personal information sufficient to identify him, including his picture and that of a girlfriend who is a student at Penn and who Penn is trying to keep in the dark about an invasion of her privacy. Penn was simply caught with its "pants down" and is trying to cover its tracks through repeated deflection and an indignation which is anything but righteous.  It accused Plaintiff of using discovery to harass, yet it used obstruction of said discovery to enable a rather serious affront to one of its female students (the woman whose picture was posted by Wintermute, presumably without his consent).

Plaintiff has provided ample additional information in this Brief to refute any claims that he is merely engaging in ***defamatory hearsay*** regarding Detective Blackmore's statements.  He has hard evidence of perjury, including evidence that a) Wintermute used a static IP address which did not change for months at a time; b) Penn does not assign "anonymous" connections to its internet users; c) Penn keeps a detailed history of past and present IP assignments in a database for "security and billing" purposes; d) Wintermute himself posted a message claiming he had been "spoken to" by Penn, which corresponded with a representation by Detective Blackmore to Plaintiff two days prior to that posting where Plaintiff was told the same thing; and e) the existence of documents in Penn's control which would allow Plaintiff to identify Wintermute and take his direct testimony concerning this matter.

The "defamatory hearsay" to which Defendant refers was that of third-party internet users that Detective Blackmore was all too willing to believe, as he responded to

---

[19] Exhibit B, the April 22, 2004 response to subpoena, which includes several references to the IP change history database.

Plaintiff's report against Wintermute by initially "interrogating" Plaintiff, with an eye towards

making a case against Plaintiff, and had to be reminded by Plaintiff that what he was reading was

a third-party accusation and not a message posted by Plaintiff.  This is a far cry from what

Plaintiff has done here.

## V. CONCLUSION

In its Motion and Brief, Penn has repeatedly mischaracterized everything from the

nature of Plaintiff's claims, the time period they cover (by ignoring the "continuing" fraud

allegation now supported by timely incident evidence and amendment to the Complaint), and

most importantly, the nature of the "adjudication" of the subpoenas and motions to compel the

release of Wintermute's identity or information which would lead to its discovery.  Penn has

portrayed Plaintiff's case as unfounded and groundless, while taking what seem to be obligatory

"swipes" at his character and motives.

It is no small wonder, given the nature of the allegations, that Penn would want once

again to "short-circuit" this case before discovery, because if Plaintiff's allegations are true,

which under the most-favorable-light standard they must be treated as by this Court, then it

would be revealed that one of their own law enforcement officers committed perjury, a felony.

Plaintiff has attempted, as best he can, to "stick to the facts," and simply show once

again what he has sued Penn for, and why: they willfully and intentionally aided and abetted an

internet-based, organized-crime ("RICO") operation designed to corner the seduction-advice

market, and did so by obstructing justice, violating the retaliation provision of the Sarbanes-

Oxley Act (18 USC §1513(e)), and committing and conspiring with Wintermute to commit fraud

against Plaintiff.  Under Beck, any nonpredicate acts (such as abuse of process, which does not

19

require termination in Plaintiff's favor of the underlying process), are also actionable under 18 USC §1962(d).

   For these reasons, and for the reasons set forth herein, Defendant's Motion To Dismiss should be **denied**.  An appropriate form of order is attached.

  This the 5th day of December, 2005.

Gordon Roy Parker
Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
GordonRoyParker@aol.com

*Exhibit A*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,              :          CIVIL ACTION
a/k/a RAY GORDON,               :
    Plaintiff,                  :
                                :
    v.                          :
                                :
JOHN DOE #1, a/k/a              :
"WINTERMUTE," and               :
JOHN DOES #2-100,               :
    Defendants.                 :          No. 02-CV-7215

### ORDER

**AND NOW,** this 25th day of February 2003, upon consideration
of Plaintiff Gordon Roy Parker's, a/k/a Ray Gordon ("Plaintiff")
continued and inexcusable failure to serve any defendants,
including those defendants identified by Plaintiff, in the above-
mentioned case, despite this Court's several admonitions to do so
and extensions of time to effectuate service, we conclude that
Plaintiff has failed to comply with this Court's January 22, 2003
letter ordering him to file proof of service of process by
February 12, 2003.  Since Plaintiff does not present an adequate
reason for his inability to serve these defendants within the
additional time this Court extended him, it is **ORDERED** that
pursuant to Federal Rule of Civil Procedure 4(m), Plaintiff's
case is **DISMISSED WITHOUT PREJUDICE.**

It is further **ORDERED** that all outstanding motions,
including Plaintiff's Second Motion for Leave to File a Second
Amended Complaint and For Extension of Time to Effect Service

(Doc. No. 18) and Motion to Enforce Subpoenas Duces Tecum on

Nonparty University of Pennsylvania (Doc. No. 8), must be **DENIED**

**AS MOOT.**

                              BY THE COURT:


                              _____
                              JAMES McGIRR KELLY, J.

*Exhibit B*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,  :

           Plaintiff  :           CASE NO.: 03-cv-6936

               :

    v.  :

               :

LEARN THE SKILLS CORP., et al  :

               :

           Defendant.  :

## PENN'S OPPOSITION TO PLAINTIFF'S AMENDED MOTION TO ENFORCE SUBPOENA DUCES TECUM AGAINST NONPARTY UNIVERSITY OF PENNSYLVANIA

University of Pennsylvania ("Penn") hereby responds to Plaintiff's Amended Motion To Enforce Subpoena Duces Tecum Against Nonparty University Of Pennsylvania:

1.-2.    No responsive pleading required.

3.    Denied.

5.    Denied.  The letter, which plaintiff attached as Exhibit B to his Motion, speaks for itself.

6.    No responsive pleading necessary.

7.    No responsive pleading necessary.

8.-9.    Denied.

Penn objects to plaintiff's statement in his "Certification Pursuant to Local Rule 26.1(f)" that "Penn did not intend to comply with any requests in the subpoena." Penn complied with the subpoena by providing all relevant and discoverable information.

Penn objects to plaintiff's statement that Penn "did not address requests 1-4) and 6) of the subpoena." The letter speaks for itself. No item 6 existed in Plaintiff's subpoena, as Exhibit A to plaintiff's Motion clearly indicates.[1]

The University has provided all relevant and discoverable information. Parker's request for information that he knows is not available is repetitive and harassing, and his request for the names and addresses of countless Penn graduates is overbroad and improper. Penn relies on the attached memorandum of law, which is incorporated herein by reference.

WHEREFORE, Penn respectfully moves that the Court deny the motion and enter the proposed order.

Respectfully submitted,

Date:    April 22, 2004

John M. Myers (Pa. Id. No. 16642)
Jonathan H. Pyle (Pa. Id. No. 89887)
Montgomery, McCracken, Walker &
     Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
(215) 772-1500

Attorneys for Nonparty
University of Pennsylvania

---

[1] Plaintiff's cover page paraphrases his subpoena and indicates a sixth item, which is described on the cover page as "6) 2002-03 Penn Student Directory." This request did not appear on the subpoena itself.

-3-

## CERTIFICATE OF SERVICE

I, Jonathan H. Pyle, do hereby certify that on the 22nd day of April, 2004, I caused a true

and correct copy of the foregoing Penn's Opposition To Plaintiff's Amended Motion To Enforce

Subpoena Duces Tecum Against Nonparty University Of Pennsylvania to be served via U.S.

First Class Mail, postage prepaid, upon the following individual at the address indicated:

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA  19104

*Pro Se Plaintiff*


Jane Doe
4846 N. University Drive
Suite 101
Landerhill, FL 33351

*Pro Se Movant*


Matthew S. Wolf
Wolf & Booth, LLC
9 Tanner Street
Suite 13
Haddonfield, NJ 08033

*Counsel for Learn The Skills Corp.*

Jonathan H. Pyle

-4-

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,    :
          :
   Plaintiff      :    CASE NO.: 03-cv-6936
          :
  v.         :
          :
LEARN THE SKILLS CORP., et al :
          :
          :
   Defendant.    :

**PENN'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION
TO ENFORCE SUBPOENA DUCES TECUM AGAINST NONPARTY
<u>UNIVERSITY OF PENNSYLVANIA</u>**

University of Pennsylvania ("Penn"), submits this memorandum in support of its

opposition to plaintiff's amended motion to enforce his subpoena duces tecum against it.

**I.  INTRODUCTION**

This is the *third* attempt by the plaintiff, Mr. Parker, to open up the student records of the

University of Pennsylvania to his perusal.

Mr. Parker served an almost identical subpoena on Penn in the predecessor case to this

one. Penn's opposition to Parker's motion to enforce that subpoena is attached as Exhibit A.

Mr. Parker next tried to obtain student records through discovery in an unrelated matter, *Parker*

*v. University of Pennsylvania*, No. 02-cv-567 (E.D. Pa.) (Brody, J.). After Penn objected to the

discovery there, Mr. Parker filed the present complaint.

Here, in his third attempt, Mr. Parker seeks various lists of students and addresses, in

circumstances which seem to have no proper motive or likely effect other than harassment of

newly graduated students not likely to be in a position to defend themselves well. While Mr.

Parker may think Penn has the information to permit him to identify the senders of certain

emails, Penn does not have such information. Mr. Parker was so informed in Penn's written

response to his discovery demands (attached as Exhibit B):

> The University has no documents or computer records from which
> the identity of the users of the IP addresses attached to the
> subpoena could be determined.
>
> The Assignments database and the IP Change Database described
> in the amended complaint dated February 27, 2004 provide no
> information about the identity of the users of the IP addresses. The
> Assignments database is a front-end system to manage Penn's
> domain name server. It contains no information about the user of
> an IP address. The IP Change Database records the date and time
> of each change to the Assignments database and the user ID of the
> computing staff member who made the change to the database.

As the testimony at the hearing before this Court on Mr. Parker's first subpoena demonstrated,

the documents and electronic data available will not permit identification of the senders of the

emails about which he complains. Neither will the information now sought.

Accordingly, since prying into the private lives of Penn students will get Mr. Parker no

farther in his quest, the Penn student database should not be opened for his perusal. The motion

to enforce the subpoena should be denied, the subpoena quashed, and an order issued.

## II.   THE FACTS

On September 18, 2002, Mr. Parker filed a John Doe lawsuit, No. 02-CV-7215, against

an individual who Mr. Parker alleged to have threatened him over the Internet on September 11,

2001, following Mr. Parker's bizarre comments on the terrorist attacks that day. He sought

discovery from Penn, a non-party, including:

> 1.   The name and home and school addresses of the individual
> known on the internet as "Wintermute" against whom I
> filed a police report with Detective James B. Blackmore of
> the Penn Department of Public Safety over the content of
> the messages attached hereto as exhibits A-2 and A-3. His

                identity can be discovered by Detective Blackmore of the
                Department of Public Safety (4040 Chestnut Street,
                Philadelphia, PA 19104 or 215-898-4481), or by Dave
                Millar (or the current Information Security Officer), at 215-
                898-2172.

2.      The location of the computers from which all of the
           attached messages A-1 thru A-9 were posted. The
           message-ID information should be sufficient to obtain the
           identity of this user from Dave Millar of the ISC
           Department.

3.      A statement from Mark Wehrle of the ISC Department
           regarding which user account posted the message attached
           hereto as Exhibit B, and which computer the message came
           from.

November 21, 2002 letter from Mr. Parker to Office of General Counsel, University of

Pennsylvania (attached as Exhibit C).

       Penn responded that "[t]he University has no available information from which the

identity of the senders of the emails attached to the subpoena could be determined." At the

subsequent hearing on February 12, 2003, David Millar, Information Security Officer at the

University of Pennsylvania, testified that the University did not have documents or computer

records from which identity of the sender of the emails in question could be determined. Penn's

Detective James D. Blackmore testified that he received a complaint from Mr. Parker on

September 11, 2001 regarding the emails, but was unable to determine the sender of the e-mails

in question.

       On February 25, 2003, the Court dismissed Mr. Parker's case without prejudice for

failure to serve any defendants "despite this Court's several admonitions to do so and extensions

of time to effectuate service." Feb. 25, 2003 Order at 1 (attached hereto as Exhibit D).

       On November 24, 2003, Mr. Parker served discovery on Penn in the case of *Gordon Roy*

*Parker v. University of Pennsylvania*, No. 02-cv-567 (E.D. Pa.) (Brody, J.), an unrelated case in

which Mr. Parker claims that Penn has discriminated against him because he is a man.  In that

case, Mr. Parker requested that Penn:

   1.      Produce each and every document relating to any
   police report filed with the Penn Department of Public Safety by
   Plaintiff during September 2001, including but not limited to the
   report filed on or about September 12-13, 2001 over internet
   threats Plaintiff had received by a Penn student known to Plaintiff
   only as "Wintermute."

   2.      Produce document(s) sufficient to identify the
   records from the Penn "IP Assignments" database that reveal the
   location of the computer and the accountholder associated with
   each IP address listed below, for each date and time listed (these
   are the IP addresses and times for the defamatory and threatening
   messages posted by "Wintermute" and which were previously
   attached as exhibits in other pleadings and which should already be
   in Penn's possession).

| DNS/IP Address | Date | IP Address |
| --- | --- | --- |
| wlt-102-199.greeknet-student.upenn.edu | 09/11/2001 | 199.102.123.165 |
| wlt-102-199.greeknet-student.upenn.edu | 09/26/2001 | 199.102.123.165 |
| wlt-102-199.greeknet-student.upenn.edu | 02/19/2002 | 165.123.102.224 |
| dhcp0006.wlt.greeknet.group.upenn.edu | 08/06/2002 | 165.123.197.36 |
| dhcp0006.wlt.greeknet.group.upenn.edu | 08/13/2002 | 165.123.197.36 |
| dhcp0006.wlt.greeknet.group.upenn.edu | 11/14/2002 | 165.123.197.36 |
| wlt-102-199.greeknet-student.upenn.edu | 09/15/2001 | 199.102.123.165 |
| School of Engineering and Applied Science | 10/24/2001 | 158.130.22.103 |
| dhcp0006.wlt.greeknet.group.upenn.edu | 04/22/2003 | 165.123.197.36 |

   3.      Produce any police reports or other summaries in
   Penn's possession, including but not limited to those from the
   Department of Public Safety and Penn's ISC, of any incidents in
   the years 2001-2003 which involve anyone with a PennNET
   account who has been accused of illegal behavior over the internet,
   including but not limited to making threats, sending mass,
   unsolicited e-mail ("spam"), or infringing copyrights.

   4.      Produce and date, in CD-ROM format, the current
   contents of the entire UPenn website (http://www.upenn.edu) as it
   currently exists.

   5.      Produce a true and accurate copy of the UPenn
   student directories from 1999-2000, 2000-01, 2001-02, and 2002-
   03.

   6.      Produce document(s) sufficient to identify the
   names of every Penn student who, at any time since 1999, were
   students at Penn who listed Mechanical Engineering as their Major
   and Mathematics as their Minor.

   7.      Produce document(s) sufficient to identify the
   names of every student who has received a degree in Mechanical
   Engineering at Penn during the calendar years of 2002-2003.

        8.     Produce document(s) sufficient to identify the
names of every Penn student who, as of May 2002, whose home
address was listed in UPenn records as Massachusetts.
        9.     Produce document(s) sufficient to identify the
names of every Penn fraternity with a house located on the Penn
campus or in an off-campus location (i.e., which is part of
"GreekNET"), and list all members of each fraternity, for the
period from the Fall Semester of 1999 through the Spring Semester
of 2003.

Plaintiff's Fourth Request For Production Of Documents, *Parker v. Univ. of Pa.*, No. 02-cv-567,

at 2-4 (E.D. Pa. Nov. 27, 2003) (attached hereto as Exhibit E). He has not yet moved to compel

a response in that case.

      Soon after Penn objected to these requests, Mr. Parker filed the instant complaint, which

is virtually identical to his original John Doe complaint, except that it names certain people by

their Internet alias and names Learn The Skills Corp., a publisher of instructional materials for

men on how to "seduce" women. Learn The Skills Corporation seems to be a competitor of Mr.

Parker's Snodgrass Publishing Group, also apparently publishing materials relating to sex and

the "seduction" of women.

      Then, on March 17, 2004, Mr. Parker served the present subpoena (attached hereto as

Exhibit F) on Penn seeking:

        1.     A list of the names of all active members of all
fraternities on the UPenn campus for the academic year of 2002-
2003.
        2.     The names of all students who graduated from Penn
in 2003 with a degree in Mechanical Engineering, or who
completed equivalent coursework.
        3.     A list of the names of all seniors from the 2002-
2003 academic year whose home state according to UPenn records
was Massachusetts.
        4.     The address of any person who fits two or more of
the criteria in 1-3 above.
        5.     The identity of the PennNET user(s) who were
assigned the IP Change History Database as listed on the attached
Exhibit A.

Penn responded to the subpoena and informed Mr. Parker, as it had informed him at the hearing on the first subpoena and earlier, that Penn could not determine "[t]he identity of the PennNET user(s) who were assigned the IP Change History Database as listed on the attached Exhibit A" (April 12, 2004 letter attached hereto as Exhibit B).

## III.    ARGUMENT

### A.    Legal Standard

Federal Rule of Civil Procedure 45 provides that: "(3)(A) On timely motion, the court by which a subpoena was issued shall quash . . . the subpoena if it . . . "(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or . . . (iv) subjects a person to undue burden." The Court may quash or modify a subpoena in order to protect the subpoena recipient from annoyance, embarrassment or oppression. *Broome v. Simon*, 255 F. Supp. 434 (W.D. La. 1965). When the subject of a subpoena objects to its enforcement, as Penn has,[1] the party seeking production of documents must show good cause that the requested documents are necessary to establish his claim or defense, or that denial of production will unduly prejudice preparation of his case or cause him hardship or injustice. *United States v. Am. Optical Co.*, 39 F.R.D. 580 (N.D. Cal. 1966).

The power of the court to require production of documents by means of a subpoena duces tecum is restricted to requiring production of documents which are or probably are evidence. *United States v. Aluminum Co. of Am.*, 1 F.R.D. 62 (S.D.N.Y. 1939). The Court may quash or

---

[1] Penn has not waived its objections to the subpoena. Penn is not even a party to this case. The subpoena is overbroad on its face and exceeds the bounds of fair discovery. Furthermore, Penn has acted in good faith in responding to this and all of Mr. Parker's discovery requests. As Parker discusses in his motion, the parties conferred regarding this discovery on April 9, 2004, prior to the filing of this motion. *See Semtek Int'l v. Merkuriy Ltd.*, No. 3607, 1996 WL 238538 (N.D.N.Y. May 1, 1996).

modify a subpoena seeking overbroad discovery. *See Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44 (S.D.N.Y. 1996).

Rule 26(c) permits this Court to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: 1) that the disclosure or discovery not be had . . . 4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters." Protective orders are available to protect against abuse of the discovery process, *Caisson Corp. v. County West Bldg. Corp.,* 62 F.R.D. 331 (E.D. Pa. 1974), and may be issued for good cause, *Miles v. Boeing Co.,* 154 F.R.D. 112 (E.D. Pa. 1994).

**B.    Mr. Parker's Subpoena Is Harassing and Overbroad**

Penn has repeatedly informed Mr. Parker that no information is available from which the identity of the senders of the emails in question could be determined. This is true even if Penn were ordered to supply the requested information. At the February 12, 2003 hearing on the first subpoena, Penn employees provided under oath the evidence establishing Penn's inability to identify the senders of the emails. Penn has documented that it does not have the information Mr. Parker seeks. Still, Mr. Parker persists in requesting, again and again, the same information from Penn – even in unrelated discovery proceedings. Rule 45 was designed to protect subpoena recipients, especially third-party subpoena recipients, from this is the sort of harassing discovery.

This third time, Mr. Parker is asking for more than simply the identity of the senders of the emails in question. Now he demands lists of the names and addresses of Penn graduates with particular academic majors or home states or fraternity memberships, in an apparent effort to hunt down the identity of "Wintermute" using personal information that "Wintermute" allegedly published on Internet sites in Australia and other places. *See* Plaintiff's First Amended

Complaint at 13-15. Even with the subpoenaed information, he will not be able to identify the sender of the emails in question.

Penn has a strong interest in keeping the names and addresses of its graduates out of the hands of persons such as Mr. Parker. The issuance of an order is appropriate here in light of that interest as well as the absence of any good cause. *See Butta-Brinkman v. FCA Int'l, Ltd.*, 164 F.R.D. 475 (N.D. Ill. 1995) (protective order issued to protect employer from having to disclose names of employees complaining of sexual harassment). If Penn turned over the lists of students that Mr. Parker demands, there is no telling how many Penn graduates Mr. Parker would contact, or what sort of methods he would use to determine whether a particular student has the Internet identity of "Wintermute." Whatever benefit there might be to giving Mr. Parker a list of possible "Wintermute" candidates is clearly outweighed by the burdens on Penn graduates who will want nothing to do with Mr. Parker and his quest to punish his online enemies. They, and Penn, are entitled to be able to stay out of his fracas.

## VII.   CONCLUSION

The Court should not enforce the subpoena but rather should quash it because the requests for names and addresses of Penn students is improper and overbroad, and the remaining request for information about the identity of senders of emails has already been answered repeatedly and is harassing. In addition, the Court should issue an order prohibiting

Mr. Parker from seeking further third-party discovery from Penn relating to the broad allegations

of this complaint without leave of Court.

Respectfully submitted,

Date:   April 22, 2004

John M. Myers (Pa. Id. No. 16642)
Jonathan H. Pyle (Pa. Id. No. 89887)
Montgomery, McCracken, Walker &
   Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500

Attorneys for Nonparty
University of Pennsylvania

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER** | : | **CASE NO.: 02-cv-7215** |
| | : | |
| **vs.** | : | |
| | : | |
| **JOHN DOE, a/ka "Wintermute" and** | : | |
| **and Does #2-100** | : | |

### RESPONSE OF THE UNVERSITY OF PENNSYLANIA
### TO THE MOTION TO COMPEL

This is a brief response to Mr. Parker's Motion to Compel. As set forth in my December 18, 2002 letters to the Court and Mr. Parker (attached as Exhibit "A"), the University has complied with the Subpoena by informing Parker and the Court that the University is not in possession of documents or information as to the identity of the senders of the e-mails attached to the Subpoena. Appended as Exhibit "B" are the Affidavits of Mr. Millar and Detective Blackmore, whom Parker asserts have such information. They do not.

There is no further response the University can give to the Subpoena.

Accordingly, the Motion to Compel should be denied.

Respectfully,

**DATED:** January 15, 2003.                  By:_____

John M. Myers
Attorney I.D. No. 16642

MONTGOMERY, McCRACKEN, WALKER
& RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
Telephone No.:        (215) 772-7535
Facsimile No.:        (215) 772-7620
Attorneys for THE UNIVERSITY OF
PENNSYLVANIA

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
ATTORNEYS AT LAW

JOHN M. MYERS
ATTORNEY AT LAW
ADMITTED IN PENNSYLVANIA

DIRECT DIAL
215-772-7535

jmyers@mmwr.com

123 SOUTH BROAD STREET
PHILADELPHIA, PA 19109
215-772-1500
FAX 215-772-7620

LIBERTYVIEW
457 HADDONFIELD ROAD, SUITE 600
CHERRY HILL, NJ 08002
856-488-7700
FAX 856-488-7720

CHRISTIANA EXECUTIVE CAMPUS
131 CONTINENTAL DRIVE, SUITE 304
NEWARK, DE 19713
302-894-7000
FAX 302-733-7937

December 18, 2002

Hon. James McGirr Kelly
Rm. 8614
U.S. Courthouse
601 Market St.
Philadelphia, PA 19106

Re:     Parker v. Doe, AKA Wintermute, 02-cv-7215
        Motion to Enforce Subpoenas Duces Tecum on
        <u>Nonparty University of Pennsylvania -</u>
        <u>Response to the Motion on Behalf of the University of Pennsylvania</u>

Dear Judge Kelly,

This letter is the University's response to the above motion, filed by letter in the hopes of maintaining reasonable economy in the matter.

Attached is the letter sent this date to the <u>pro se</u> plaintiff. Simply put, the University, which is not a party to this matter, has nothing responsive to the subpoena.

If Mr. Parker does not withdraw his motion based upon this response, or if the Court so directs, the University will file more formal objection to the subpoena, and/or a more formal response to Mr. Parker's motion. By responding to Mr. Parker as we did, we did not intend to waive any of the University's objections or defenses to the subpoena.

Sincerely,

John M. Myers

A LIMITED LIABILITY PARTNERSHIP FORMED IN PENNSYLVANIA
LUIS A. PETIONI - NEW JERSEY RESPONSIBLE PARTNER

Hon. James McGrr Kelley
December 18, 2002
Page 2


    cc:    Gordon Roy Parker
           Eric Tilles, Esq.

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
ATTORNEYS AT LAW

JOHN M. MYERS
ATTORNEY AT LAW
ADMITTED IN PENNSYLVANIA

DIRECT DIAL
215-772-7535

jmyers@mmwr.com

123 SOUTH BROAD STREET
PHILADELPHIA, PA 19109
215-772-1500
FAX 215-772-7620

LIBERTYVIEW
457 HADDONFIELD ROAD, SUITE 600
CHERRY HILL, NJ 08002
056-488-7700
FAX 856-488-7720

CHRISTIANA EXECUTIVE CAMPUS
131 CONTINENTAL DRIVE, SUITE 304
NEWARK, DE 19713
302-694-7000
FAX 302-733-7937

December 18, 2002

Gordon Roy Parker
4247 Locust St. #806
Philadelphia, PA 19104

Re: <u>Parker v. Doe, aka Wintermute,</u> 02-cv-7215
    Subpoena Directed to Office of General Counsel, University of Pennsylvania

Dear Mr. Parker:

Without waiver of any and all objections to the subpoena, the University of Pennsylvania
responds as follows:

> The University has no available information from which the
> identity of the senders of the emails attached to the subpoena could
> be determined.

Based upon this response, it is my expectation that you will promptly withdraw the Motion to
Compel. Should you refuse, the University will assert every available defense and objection to
the motion to compel which you have filed.

Sincerely,

John M. Myers,
Counsel for the University

cc:    Eric Tilles

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER** | : | **CASE NO.: 02-cv-7215** |
| | : | |
| vs. | : | |
| | : | |
| **JOHN DOE, a/ka "Wintermute" and** | : | |
| **and Does #2-100** | : | |

### STATEMENT
### OF
### DAVID MILLAR

I, David Millar, declare the following:

1.      I am the Information Security Officer at the University of Pennsylvania.

2.      In that connection, I was asked by University Counsel whether the University has computer information or documents from which the identity the sender of the e-mails attached to the subpoena directed to the University can be determined.

3.      The University has no documents or computer records from which the identity of the senders of the e-mails attached to the subpoena could be determined.

Pursuant to 28 USC 1746, I declare under penalty of perjury that the foregoing is true and correct.

David Millar            (date)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GORDON ROY PARKER | : | CASE NO.: 02-cv-7215 |
| | : | |
| vs. | : | |
| | : | |
| JOHN DOE, a/k/a "Wintermute" and aud Does #2-100 | : | |

## STATEMENT
## OF
## JAMES B. BLACKMORE

I, James D. Blackmore, declare the following:

1.    I am a Detective in the University of Pennsylvania Department of Public Safety.

2.    In that connection, I was involved in the processing of a Complaint by Gordon Roy Parker on September 11, 2000.

3.    I was unable to determine the sender of the e-mail about which Mr. Parker complained.

4.    Other than the report attached to Mr. Parker's subpoena, a copy of which I have seen, I have no information or paperwork, and am not aware of any held by the University, concerning this incident.

Pursuant to 28 USC 1746, I declare under penalty of perjury that the foregoing is true and correct.

James B. Blackmore                1-6-03
_____    _____
James B. Blackmore                (date)

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | **CASE NO.:** 05-cv-2752 |
| v. | : | |
| | : | |
| **Learn The Skills Corp.**, et al. | : | |
| | : | **Hon. Harvey Bartle, III** |
| Defendants. | : | |

### CERTIFICATE OF SERVICE

I, Gordon Roy Parker, hereby certify that I have served the foregoing **Brief In Opposition**

**To Defendant University of Pennsylvania's Second Motion To Dismiss, Brief in Opposition**

**To Defendant LTSC's Second Motion To Dismiss,** and **Brief in Opposition To Defendant**

**Wolf's Second Motion To Dismiss,** on the following Defendants, by the following means:

| | | |
|---|---|---|
| **Trustees of the Univ. of PA**<br>Dennis G. Young (Counsel)<br>Montgomery, McCracken,<br>Walker & Rhoads<br>123 South Broad Street, 28th Fl.<br>Philadelphia PA  19109<br>**Hand Delivery** | **Mary Kay Brown, Esq.**<br>Buchanan Ingersoll<br>1835 Market Street, 14th Floor<br>Philadelphia, PA  19103<br>**Hand Delivery** | Matthew S. Wolf, Esq.<br>241 Kings Highway East<br>Haddonfield, NJ  08033<br>Attorney For LTSC And<br>Defendant<br>**Regular Mail** |
| Thom E. Geiger<br>817 North McCrary Road<br>Columbus, MS  39702-4320<br>**Regular Mail** | Formhandle@fastseduction.com<br>Learn The Skills Corp.<br>955 Massachusetts Ave, #350<br>Cambridge, MA 02139<br>**Regular Mail** | **FILED**<br>DEC 0 5 2005<br>MICHAEL E. KUNZ, Clerk<br>By_____ Dep. Clerk |

This the 5th day of December, 2005.

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
GordonRoyParker@aol.com
Plaintiff, Pro Se