*Clerk Copy*

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**,                               Plaintiff, <br><br> v. <br><br> **Learn The Skills Corp.**, et al. <br><br>                            Defendants. | **FILED** <br><br> JAN 0 3 2006 <br><br> MICHAEL E. KUNZ, Clerk <br> By _MAC_ Dep. Clerk <br> CASE NO.: 05-cv-2752 <br><br> Hon. Harvey J. Bartle, III |

## CERTIFICATE OF SERVICE

I, Gordon Roy Parker, hereby certify that I have served the foregoing **Brief In Opposition To Defendant Thom E. Geiger's Motion To Dismiss, Brief in Opposition To Defendant LTSC's Second Motion To Dismiss,** and **Brief in Opposition To Defendant Wolf's Second Motion To Dismiss,** on the following Defendants, by the following means:

| | | |
|---|---|---|
| Trustees of the Univ. of PA <br> Dennis G. Young (Counsel) <br> Montgomery, McCracken, <br> Walker & Rhoads <br> 123 South Broad Street, 28th Fl. <br> Philadelphia PA  19109 <br> **Hand Delivery** <br><br> Thom E. Geiger <br> 817 North McCrary Road <br> Columbus, MS  39702-4320 <br> **Regular Mail** | Mary Kay Brown, Esq. <br> Buchanan Ingersoll <br> 1835 Market Street, 14th Floor <br> Philadelphia, PA  19103 <br> **Hand Delivery** <br><br> Formhandle@fastseduction.com <br> Learn The Skills Corp. <br> 955 Massachusetts Ave, #350 <br> Cambridge, MA 02139 <br> **Regular Mail** | Matthew S. Wolf, Esq. <br> 241 Kings Highway East <br> Haddonfield, NJ  08033 <br> Attorney For LTSC And <br> Defendant <br> **Regular Mail** |

This the 3rd day of January, 2006.

Gordon Roy Parker
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
GordonRoyParker@aol.com
Plaintiff, Pro Se



**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

**FILED**

| | | |
|---|---|---|
| **GORDON ROY PARKER**, a.k.a. **Ray Gordon**, d/b/a **Snodgrass Publishing Group**, 4247 Locust Street, #806 Philadelphia, PA 19104 | : : : : : | **JAN 0 3 2006** **MICHAEL E. KUNZ, Clerk** By *MAK* Dep. Clerk |
| Plaintiff, | : | **CASE NO.: 05-cv-2752** |
| v. | : : | |
| **Learn The Skills Corp.** et al. | : : | **Hon. Harvey J. Bartle, III** |
| Defendants. | : | |

### PLAINTIFF'S BRIEF IN OPPOSITION TO
### DEFENDANT THOM E. GEIGER'S MOTIONS TO DISMISS

**Plaintiff** Gordon Roy Parker, in the above-styled action, submits this response to

Defendant Geiger's Motions To Dismiss and Memorandum in support thereto.

### I. INTRODUCTION

Defendant Geiger has not followed generally acceptable form for filing motions, thus

burdening Plaintiff to sort through his paperwork and figure out what he is trying to say.

Specifically, the motions are jumbled together, not dated, not organized properly, and in many

cases, without citations to supporting or relevant case law. Plaintiff has experience in the legal

profession, and understands that Defendant Geiger is proceeding *pro se,* but is nonetheless

burdened.

In his "motions to dismiss," Defendant Geiger states that he denies "each and every

allegation in the instant complaint."[1] Assuming that he is referring only to those allegations and

averments specific to himself, as he claims no knowledge of his co-conspirators, that would

include the following:

---

[1] Defendant Geiger's presentation of his motions make it impossible to cite page numbers or documents, as there are no page numbers on them and the documents were not filed separately.

1.   The averment that "Defendant Geiger resides in Columbus, Mississippi and has been served."[2]

2.   The averment that Defendant Geiger had registered a website concerning Plaintiff in 2000 with Kracked.com.[3]

3.   The averment that Defendant Geiger was also "Subzer0" and posted messages to USENET through Altopia Corporation concerning Plaintiff.[4]

4.   The averment that Defendant Geiger is the owner of the internet domain located at http://www.ray-gordon.com,[5] despite his name being returned to Plaintiff in discovery in Parker v. Wintermute as the sole owner and administrative contact for the name, and despite his name being listed, at all relevant times in this action, in the "whois" database that contains contact information for those who register domains.

5.   The averment that Defendant Geiger does not have a DMCA agent listed with the Library of Congress (necessary to invoke immunity under the DMCA),[6] even though no such agent is listed.

6.   That as the domain owner, Defendant Geiger has exclusive control over what is published on any web page in that domain.[7]  This would be like claiming that if Your Honor registered the domain http://www.harveyjbartle.com , that he would have no control over pages that appeared on that site, e.g., http://www.harveyjbartle.com/decisions.html.  It is also akin to claiming that the owner of a car does not have exclusive control over who gets the keys, or that the owner of a home does not have exclusive control over who may stay there.  This

---

[2] Amended Complaint, p. 1, ¶ 3.
[3] Id, p. 12, ¶ 43.  Plaintiff was given Defendant Geiger's name specifically by Kracked.com when he asked for the information on who had put up a site allegedly from a "Ray Gordon" who was supposedly angry at Plaintiff's "tarnishing" of his name.
[4] Id, p. 27, ¶ 72.
[5] Id., p. 28, ¶ 75.
[6] Id., p. 28, ¶ 77.
[7] Id., p. 29, ¶ 79.

argument, upon which much of Defendant Geiger's defense rests, is incredulous on its face. Any

pages that were published on the http://www.ray-gordon.com domain were most definitely under

his control, as he and he alone controlled FTP access to the domain name.

        7.    That he did not post to USENET under his own name, despite the messages

being signed with his name and his not claiming they were authored by anyone else (message

IDs have been provided in the Amended Complaint), and did not make the statements attributed

to him in the Amended Complaint, in the messages posted to USENET which were cited thereto,

including the following:

             a.    A claim that Plaintiff had been notified of Rule 11 violations.[8]

             b.    A claim that Plaintiff had accused Defendant Geiger of using

unauthorized software on his government workstation, and stating that he was getting the Office

of Special Investigation involved.[9]

             c.    Claims that he had "in fact, forwarded two messages, about children

whose mothers allegedly "pimp" their underaged daughters to internet hypnofetishists, to the

Federal Bureau of Investigation since 7/10/2003," and that he had involved the US Defense

Intelligence Agency in the allegations made in the original Complaint.[10]

             d.    A claim that Plaintiff's allegations in his complaint have sparked a

"federal investigation" and that "Federal court is the least of the processes involved now."[11]

             e.    A claim that "[Plaintiff] and I will be meeting one another in the

Northern District of Mississippi Court when this current action of his is dispensed with.[12]

---

[8] Id., p. 29, ¶ 80(b).
[9] Id., p. 30, ¶ 80(c).
[10] Id., p. 30, ¶ 80(d)
[11] Id., p. 30, ¶ 80(e)
[12] Id., p. 30, ¶ 80(f)

3

f.    A post advising Defendant Trustees of the University of Pennsylvania to seek sanctions against Plaintiff and to consider a Dragonetti lawsuit against Plaintiff.[13]

8.    That Defendant Geiger has not offered any evidence to support his claims of third-party publication of the website.[14]  He has not.

9.    That Defendant Geiger, through his stated claim that he does not know who the author of the RayFAQ website is, has made it impossible to subpoena their identity, since the only way to find out who is publishing a website is to find out who owns the domain, and to find out from the domain owner who has permission to upload files to it via FTP.[15]

While Defendant Geiger can be expected to deny the allegations regarding collusion and conspiracy, here he has denied facts which are either self-evident, have been produced through discovery, are clearly likely to be true (without offering any refutation), and which can be resolved through discovery.  Defendant Geiger, by denying "each and every allegation," even denied that he resides in Mississippi or was served with this action.

Defendant Geiger's motions, and the posturing which accompany them, are borne from the notion that "the best defense is a good offense."  He wants this Court to short-circuit the litigation process and declare him the winner without affording Plaintiff the benefit of discovery.  Previously, Defendant Geiger served upon Plaintiff a previous "motions to dismiss" with *several hundred pages* of exhibits, including highly inflammatory material concerning Plaintiff which was irrelevant to this action, yet did not file it with the Court.  As also noted in the Amended Complaint, Defendant Geiger is now posturing as if he was previously neutral, disinterested, uninvolved, and unbiased, but "in the course of research" for his defense, has come across information which puts him on the same page as his co-defendants.  Currently, his websites

---

[13] Id., p. 31, ¶ 80(g)
[14] Id., p. 32, ¶ 82.
[15] Id., p. 57, ¶ 157.

contain many derogatory and some defamatory statements concerning Plaintiff, and the USENET postings cited above further underscore this posture, which Plaintiff holds is untrue and not at all reflective of Defendant Geiger's involvement in the Seduction Mafia.

## II.  STATEMENT OF ISSUES/BACKGROUND FACTS

Defendant Geiger sets forth his framing of the issues in this action and "background facts." Plaintiff responds as follows:

1-7. No paragraphs 6-7 are listed, and paragraphs 1-5 list his statement of issues. The issue of convenience for witnesses is irrelevant, since they can be deposed in their home jurisdictions. Far more compelling in the "interests of justice" cited by Defendant Geiger, however, is the burden on the Plaintiff of first having to endure a nationwide conspiracy targeted at him from the pseudonymity of internet aliases, and then having to drain his already-limited resources to "globetrot" and defend his rights, to the point where part of the strategy of the conspiracy is to spread Plaintiff so thin that he couldn't properly litigate.

8.   While no responsive statement is required, Defendant Geiger is assuming that Plaintiff authored all USENET messages attributed to himself, despite Plaintiff having been impersonated repeatedly on USENET. Further, any facts he wishes to use to support his defense are beyond the scope of a motion to dismiss. Further, Defendant Geiger does not reference his declarations in his memorandum.

9.   Defendant Geiger admits he resides in Mississippi, despite his having denied "each and every allegation" in the Amended Complaint.

10.   Whether or not Defendant Geiger's claims about not having a "presence" in Pennsylvania are true, they are irrelevant to the extent that Plaintiff is claiming jurisdiction based on RICO's national service of process (18 USC §1965(b)), Pennsylvania's long-arm statute, the

presence of several co-conspirators in this district, and because the damage from Defendant

Geiger's actions (and those of his co-conspirators) either occurred in Pennsylvania, were targeted

at Pennsylvania residents, or caused their primary damage in Pennsylvania.

11.   Defendant states that "no events or circumstances are alleged to have occurred in

any Philadelphia locations."[16]  This is false, since all conduct of Defendant Trustees of the

University of Pennsylvania's ("Penn's") conduct occurred exclusively in Pennsylvania.

Defendant's claim that venue is based solely on allegations of defamation is also disingenuous,

as this action includes claims for invasion of privacy, tortious interference, civil conspiracy, and

RICO, among others.

12.   Defendant states that "there have been no activities by Defendant in

Pennsylvania to distinguish Pennsylvania from any other location in the United States," and

claims that Mississippi is where "any evidence is located."  He further claims that defending

himself in this venue would be burdensome, yet he should have considered this when allegedly

allowing an unknown third party, who could reside anywhere, to use his domain to publish the

RayFAQ website, and he was fully aware of the locations of the other Defendants, over whom

this court definitely has jurisdiction.

### III.  LEGAL ARGUMENT

13.   **Denied.**  Defendant Geiger again attempts to mischaracterize his involvement in

the RayFAQ website.  He states that:

> The basis of the complaint against Defendant Geiger is that "Defendant registered
> a domain name, and at some time, redirected (hereafter referred to as "pointed")
> that domain name to a web site on a computer server on the internet. Plaintiff
> Parker (hereafter referred to as Plaintiff) alleges Defendant's lawful registration
> and lawful domain pointing harmed plaintiff in some vague and unspecific way,
> and said lawful registration and lawful domain pointing constitute participation by

---

[16] Memorandum, p. 3, ¶ 11.

Defendant in a criminal conspiracy aimed at harming Plaintiff and/or Plaintiff's business.[17]

This is *not* what Plaintiff is basing his complaint on. Defendant Geiger states that the ray-gordon.com domain merely "pointed" to another website by "redirecting" it to "a computer server on the internet." Even if that were true, this would be the same as publishing the content on Defendant Geiger's domain, but in this case, the RayFAQ pages were located *on the ray-gordon.com domain itself.* A case of "redirection" of a domain might occur if the hypothetical domain of www.harveyjbartle.com were to redirect users to a page on www.cybersheet.com, but as of October 24, 2002, no secondary domains were involved in publication or transmission of the RayFAQ website. Rather, Defendant Geiger's domain made him the sole contact related to the content of the RayFAQ website, and only he had the ability to stop its publication by refusing to allow the pages to be posted to his site, whether or not by him or a third party. Further, Defendant Geiger has not established that any third party actually published the site.

14. **Denied.** This statement contains conclusions of law regarding previous incarnations of this case, to which no responsive statement is required. To the extent that one is required, it is denied.

15. **Denied.** Defendant Geiger refutes his own blanket denial of "each and every allegation" in the Amended Complaint by acknowledging his communication with the FBI and child protection agencies, and goes on to claim that they "have no bearing on the case at issue and have been included solely to prejudice Defendant in his attempt to mount an adequate defense in this case."[18] Plaintiff finds this sequence of events incredulous, since it was in the course of commenting on this case on USENET that Defendant mentioned these communications, and that they were the result of Plaintiff having filed this action. For him to

---

[17] Id., p. 4, ¶ 13.
[18] Id., p. 4, ¶ 15.

7

now say that they are irrelevant would be tantamount to an admission that Defendant Geiger was

attempting to intimidate Plaintiff into withdrawing this case or not serving him with it.  Further,

this information is highly relevant to the action at hand, as it is relevant to malice, motive, and

extortion through the threat of using federal and legal process maliciously in an attempt to extort

Plaintiff under color of law.

16.   **Admitted.**  Defendant Geiger is merely restating a paragraph from the Amended

Complaint.

17.  Plaintiff is without sufficient information to form a response to this averment.

18.  **Denied.**  Plaintiff never stated with absolute certainty that Defendant Geiger was

posting as "Editorial Staff."  Rather, he alleged that the "Editorial Staff" claimed to be the

publisher of the RayFAQ, and that discovery of the domain records, as well as Defendant

Geiger's refusal to name any third-party publisher, indicated that they were one and the same.

However, Plaintiff also pled in the alternative that it did not matter if they were in fact the same

party, and even if they were not, that Defendant Geiger was still legally liable as the domain

owner and/or publisher of the site.  Never was he accused of abusing government resources, and

never was he required to initiate any type of investigation, assuming that in fact he has.

19.  **Denied.**  Since Plaintiff never accused Defendant Geiger of abusing government

resources, his factual basis is flawed, and he offers no legal argument to support the striking of

any averments related to Defendant Geiger's own statements (generally admissible) concerning

any investigations he launched of his own volition, and which he made of his own volition.  It

would appear that Defendant Geiger did not like the consequences of his actions, and upon

further reflection, wants to take a "Mulligan" and pretend he never took them.  Plaintiff can find

no other explanation for this sudden desire to strike these references from the record other than

8

someone not wanting it discussed in this case. Defendant Geiger has also ceased posting to USENET for several months, at least under his own name. Since the single mothers in question also read USENET, Plaintiff finds this perplexing at the very least.

20.   **Admitted.** Defendant Geiger is merely restating an averment from the Amended Complaint, which is not in dispute.

21.   **Admitted in part, denied in part.** Plaintiff admits that he has publicly accused single mothers of endangering their children by placing them in proximity to men they meet in "fetish" chats, but denies any characterizations of his "detailed and intimate knowledge" of same.

22.   **Denied.** Defendant Geiger, in his pleadings and on USENET, has repeatedly made sure to remind his audience that he came across these USENET messages solely as a consequence of this lawsuit. Plaintiff would obviously require the benefit of discovery to support this denial, and under the most-favorable-light standard for a motion to dismiss, Defendant's argument is misplaced, since Plaintiff has alleged that Defendant Geiger has been aware of him and his USENET postings since 1998, and that Defendant Geiger registered a "hate site" concerning Plaintiff in 2000 with Kracked.com. The purpose of this posturing is for Defendant Geiger to appear "converted" by neutral investigation rather than what he is, which is a Seduction Mafia Principal who has "had it in" for Plaintiff ever since he blew the whistle on child abuse in gymnastics in 1998.

23.   Plaintiff is without sufficient information to admit or deny this averment, but by way of further answer, adds that Defendant Geiger's reporting of these allegations would have satisfied his role as a "concerned citizen," without his broadcasting of same to USENET during discussions of this lawsuit.

24. Plaintiff is without sufficient information to admit or deny this averment, but it is consistent with what Defendant Geiger has stated in the past.

25. **Denied.** Defendant Geiger is having difficulty keeping his story straight. Here he says that he only contacted the FBI and CMEC because of the children that were involved, yet earlier he has stated that he contacted the Office of Special Investigation regarding what Plaintiff had stated in his lawsuit. Plaintiff further avers, now as then, that Defendant Geiger's motives were to involve criminal investigations as a tactic for defending a civil lawsuit.

26-27. Plaintiff is without sufficient information to admit or deny these averments.

28. **Denied.** Plaintiff notes that despite Defendant Geiger's desire to strike the child-abuse material from the record, he is asking the court to "take note" of Plaintiff continuing to publish what he claims is irrelevant material to USENET. Defendant would seem to like to have it both ways here. Plaintiff further denies any averment that he "ignored all admonishments" to report said crimes, while noting that most states require such reporting to come from a witness, a family member, or someone operating on more than internet knowledge. This is not to say that Plaintiff's evidence is nonexistent, for it is not, only that our government refuses to consider it as it is currently structured. To the extent that Plaintiff could report child abuse, he does. For example, in 1994-1997, when Plaintiff learned through internet communication that Dominique Moceanu (olympic gymnast) was being abused, he attempted to report this abuse to the FBI and was told to "let it go," and then tried to report it to the state of Texas, but was told that since he wasn't a family member or witness he could not file a report. This is too bad for Ms. Moceanu, who had to endure another eighteen months of abuse before fleeing her home in October, 1998.

29. **Admitted.** Plaintiff did in fact introduce the subject matter of the investigations into the pleadings in this case, but that is as it should be, since it is central to motive, malice, and

attempted extortion and intimidation by Defendant Geiger. The information is relevant and by all means should have been included. Defendant Geiger, however, is the one who introduced the matter to USENET when discussing this lawsuit.

30.  **Denied.** Defendant Geiger is making conclusions of law which do not require a response, but to the extent they do, his averments are denied. He avers that it is not illegal to report child abuse, yet ignores that Plaintiff's averments relate to his statements to USENET, and not his actual reports, and are relevant to malice, motive, and conduct.

31.  **Denied.** Defendant Geiger again mischaracterizes Plaintiff's claims against him, averring that they are based solely on the "position that Defendant Geiger must be the author and copyright owner of intellectual content" that appeared on the domain he owned. This is not the case at all: Plaintiff is arguing that Defendant Geiger controlled publication of the website, not necessarily as the author of the site itself, and that he registered the domain to cloak any third-party authors while attempting to claim immunity for himself. That act was taken in furtherance of a conspiracy and central to the RICO enterprise, because it enabled USENET posters to simply link to his website rather than repost the defamation themselves, allowing the co-conspirators and operatives to duck individual liability. Despite his repeated claims that he is not the author of the site or the user who uploaded the files, Defendant Geiger never states who is.

32.  **Admitted.** Defendant Geiger is quoting the Amended Complaint.

33.  **Denied.** Defendant Geiger states that "if a domain name does not allow the person registering it to control the content on any website the domain name is pointed to, then all claims, averments and allegations based on Plaintiff's premise are false." Defendant Geiger's premise is what is false here: for example, Plaintiff is the owner of the www.cybersheet.com domain. As such, he and he alone controls the content that appears on any website with that

domain. Even if Plaintiff gave that control to a third party, he ultimately can revoke it just as the owner of a car can revoke the keys from a third-party driver, or the owner of a home can evict a trespasser. Defendant Geiger is like the owner of a car claiming he had no knowledge of who was driving when an accident occurred, and who refuses to state who he may have given the keys to, and that assumes that he isn't in fact the publisher of the site himself, something he has not offered any evidence to refute.

34-35. **Admitted.** Defendant Geiger is merely quoting the Amended Complaint.

36. **Denied.** Defendant Geiger *again* is trying to claim that Plaintiff's action against him is based solely on his being the actual author and publisher of the RayFAQ. He has pled in the alternative, as is his right: first, the existing evidence shows that Defendant Geiger, and only Defendant Geiger, is involved in the publication of the RayFAQ and anything else on the ray-gordon.com domain, and alternatively, that even if Defendant Geiger is not the actual publisher of the site (according to his claim that some anonymous third party is "driving his car" or using his domain), that he is still liable for what appears on a domain that he ultimately controls. Should Defendant Geiger prove third-party authorship, the alternatively pled claims would survive.

37. **Denied.** Defendant Geiger makes a conclusion of law here, and states that liability should extend to a third-party individual rather than him if in fact he is not the author of the site. By omitting any reference to such a third-party, however, Defendant Geiger supports Plaintiff's claim that there is no third party, that he is refusing to name any third party, or that he deliberately made it impossible for himself to name the party as a means of aiding and abetting the RICO enterprise, for which he would be liable. Further, Plaintiff has argued that Defendant Geiger is liable regardless of third-party authorship, as he is the domain owner.

12

38.   **Denied.** Defendant is hair-splitting: a domain name is what people type into a computer, to get to a website.  The domain name is merely a verbal representation of the website's IP address.  The domain owner controls which IP the website is located at, and who may upload files to that domain.  Any citations to previous evidence should also be pinpoint, but are not here.

39.   **Denied or irrelevant**, as follows:

a.   The claim in ¶ 39(a) (p. 9) is hair-splitting, as outlined above.

b.   The claim in ¶ 39(b) – that "The registration of an internet domain name does not allow any type of control over creative intellectual property on any web site that domain name points to anywhere on the internet" – is patently false, and would be like claiming that Plaintiff had no control over the www.cybersheet.com website, or even that this Court has no control over what appears on the website located at http://paed.us.courts.gov, its website.

c.   Defendant states that "No permission or communication between the registrant of a domain name and the author/copyright holder of any intellectual property, at any publicly accessible web site, is  needed or necessary in order to point i domain name at said content."  This is also false, because it would be like saying that no permission or communication would be required for someone to upload files to this Court's website.  Simply put, a domain owner has absolute control over what appears on websites with that domain name.

d.   Defendant states that "Intellectual content posted to a web site, anywhere on the internet, can be accessed by the Internet Protocol (IP) numbering system underlying the data network that comprises the World Wide Web, without being pointed to by a domain name." This is irrelevant, as Defendant knowingly allowed his domain name to be associated with the RayFAQ website, whether or not he is the actual author.

40. **Denied/irrelevant.** Defendant is attempting to liken the publication of the RayFAQ to the simple redirecting of internet users to a second domain. Even then, however, he would be liable, as it would still count as publication of the site. However, the RayFAQ website was located *on the ray-gordon.com domain itself*, not another domain. The pages were prefixed as such, and this has been alleged in the Amended Complaint. Further, since this is a motion to dismiss, where the most-favorable-light standard applies, Defendant Geiger's factual defenses are inappropriate, as Plaintiff has not been afforded discovery.

41. Plaintiff is without sufficient information to respond to this averment, but by way of further answer states that it is irrelevant, as Defendant Geiger states merely that he does not know who controls the PACER website, which is not at issue, although he does state that he "assumes" Plaintiff is responsible for the content of his own domain's website, which is the same assumption upon which Plaintiff's averments were based. Despite repeated opportunities to step forward with the name of any third-party publisher, or why he would not know the name, Defendant Geiger has conveniently demurred.

42. **Denied.** Defendant Geiger yet again attempts to claim he had no control over the publication of the RayFAQ as alleged in the Amended Complaint (assuming it was a third-party publisher, which has not been proven). For this to be true, it would have to have been possible for *anyone* to upload files to the www.ray-gordon.com domain, rather than permission being required from the domain owner. Had this been possible, Plaintiff himself would have been able to delete the files from the domain. Defendant's claim is false on its face.

43. **Admitted/irrelevant.** Defendant Geiger is now stating that anyone can access Google's website by typing in its IP address. This does not address, however, that Defendant Geiger allowed his ray-gordon.com domain to be associated with this website, or that the IP

address of a site can change if it is taken down by a host (which this one was several times).  His statement does nothing to address the issue of liability or third-party authorship.

44.  **Denied/irrelevant.**  Defendant Geiger states that the domain owner doesn't necessarily own the intellectual property that appears on that domain's website), which is completely irrelevant, as Defendant Geiger did have control over who could upload files, including the RayFAQ, to the ray-gordon.com domain, which he owns.  Further, his claim that a domain owner has no control over publication of files on that domain is false on its face, as shown previously.

45.  **Admitted/irrelevant.**  Defendant Geiger makes another meaningless "true" statement that a website can be accessed through its IP address in addition to its domain name.

46.  **Denied.**  Defendant Geiger has made several false statements that Plaintiff can refute, and this does not address the issue of his "facts" being irrelevant to this motion, and to this action.

47.  **Denied,** and irrelevant (as they relate to factual defenses), as follows:

a.  The evidence Plaintiff uncovered in previous discovery pointed exclusively to Defendant Geiger as the publisher of the RayFAQ.

b.  Plaintiff had not been allowed discovery that would have taken place, and such discovery still would not have refuted the basis for his claims against Defendant Geiger.

c.  Plaintiff amended this action not to remove anything from this Court's view, but to demonstrate the irrelevance of Defendant Geiger's claims by showing how he is liable regardless, even if what he says is true, although Defendant has offered no evidentiary support for his claims.

15

48.   **Denied.** This is a conclusory allegation to which no response is required.  To the extent a response is required, it is denied.

49.   **Admitted/Irrelevant.** Doe #6, a/k/a rayinfo@email.com, posted a message to USENET claiming to be the author of the RayFAQ.  However, anyone can claim anything on USENET, and that in no way proves that he was in fact the author, or that Defendant Geiger was not using his account.  It is possible to log onto an internet connection from a secondary point, even if one is not the direct accountholder.  Rather, the way to uncover the name of a website publisher is through the domain holder and/or webhost.  Discovery of the domainholder (NamesDirect) revealed Defendant Geiger as the sole contact for the domain, which in the absence of evidence to the contrary, indicates that he is the publisher.

50.   **Admitted/Irrelevant.** Defendant Geiger quotes a previous pleading by Plaintiff, which is again irrelevant, since Plaintiff's discovery of the domain holder for the ray-gordon.com domain was the most desirable means for establishing authorship of the website.  Anyone can claim anything on USENET.  That Plaintiff chose to take a claim at face value pending discovery hardly proves the statement.

51.   **Admitted/Irrelevant.** Plaintiff's averment that Doe #6 was the actual publisher of the RayFAQ is not relevant to this action.  By the time Parker v. LTSC (I) was filed, the IP information surrounding the Comcast user would have been long gone (they retain newsgroup postings and IP histories for a short period of time).  Instead, Plaintiff has hard evidence that Defendant Geiger is the domain owner, and as such, has control over publication to the site or who is publishing to it.

52.   **Denied.** Nothing has been proven about Doe #6, since no discovery was undertaken (the cases never reached that point), but in the course of identifying the domain

owner (who was not known to be Geiger at the time), Defendant Geiger was uncovered as the individual with exclusive control over the ray-gordon.com domain and its RayFAQ website.

53-55.  Plaintiff is without sufficient information to respond to these averments, but they are irrelevant to a motion to dismiss, given the most-favorable-light standard, or just plain irrelevant.

56.  **Admitted/irrelevant.**  Plaintiff's knowledge of how to decipher USENET headers is not germane to this action and does not change Defendant Geiger's involvement in the conduct in controversy as alleged herein.  Further, it is a factual argument which is irrelevant to a motion to dismiss.

57-59.  **Admitted in part, denied in part, Irrelevant.**  Plaintiff's knowledge of how to determine the ISP from which a USENET posting originated is not relevant to Defendant Geiger owning the ray-gordon.com domain, or publishing (or causing to be published) the RayFAQ website.  Plaintiff could post to USENET that he is the President of the United States, but discovery of the White House records would be a far more reliable indicator, just as discovery of domain records is a more reliable indicator of who publishes a website.  Plaintiff denies the parts of these averments which relate to it having been possible for him to engage in discovery through Comcast, due to evidence spoilage and the uncovering of subsequent evidence.

60.  **Denied.**  Plaintiff has not knowingly made any false claims.  He claimed that Defendant Geiger was the sole owner and administrative contact listed for the ray-gordon.com domain, and that anyone claiming to be the author of the RayFAQ, including "Editorial Staff," would therefore likely be Defendant Geiger.  IP records are not maintained for sufficient length

to make discovery of Doe #6's identity possible, and further, alternate discovery yielded the

domain owner's name regardless.

61.   Plaintiff is without sufficient information to respond to this averment.

62.   **Denied.**  Plaintiff denies, to the extent he has to, the implied conclusory

allegation that Defendant proved beyond any doubt that he could not access Comcast through

another account from another user.  Where an ISP is located does not restrict where it may be

accessed from.  Even if Defendant's statement is true, it is still not relevant, and not germane to

this motion or this case.

63.   **Denied.**  All of Plaintiff's claims have not been proven to be untrue, and for the

purposes of this motion, must be treated as true by this court under the most-favorable-light

standard.  Defendant repeatedly ignores his role in all of this as the sole owner of the domain on

which the RayFAQ website was published, claiming it was by a third party he does not know,

and refusing to explain a) why he does not know; or b) how he came to give publishing rights via

FTP to this allegedly anonymous party.  Defendant's employment had nothing to do with this

case, except to the extent that Defendant himself injected them into it via investigations triggered

by allegations that he claims which Plaintiff never in fact made.

### IV.  MOTION TO STRIKE

64.   No response to this averment is required.

65.   Defendant now wants to strike references to *his own statements* which he posted

publicly posted to USENET about reporting alleged criminal activity, despite their being relevant

to malice, motive, and conduct.  Plaintiff digresses.

66.   Defendant Geiger has presented no *evidence* to support his claims, or at least

none which would subject him to things like discovery and cross-examination, and is seeking a

"free ride" that stops just short of the point where Plaintiff's rights would begin to refute his position. Plaintiff again digresses. Due process alone requires more. Further, even the facts as Defendant Geiger sets them forth would still incur liability based on the allegations and claims.

## V.   MOTION TO DISMISS/LACK OF JURISDICTION.

A Motion For Jurisdictional Discovery by Plaintiff is pending in this court. This Court should not entertain a dismissal for lack of jurisdiction in this case without first allowing the discovery sought in this motion. In Toys "R" US, Inc., v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003), the Third Circuit remanded the case back to the District Court to allow for exactly this type of discovery when jurisdiction was in controversy, refusing to allow a motion to dismiss for lack of jurisdiction without the Plaintiff having the benefit of such discovery.

67.   Defendant Geiger cites Catalina Mktg. Int'l, Inc. v. Coolsavins.Com Inc., #00-2447, 2003 (N.D. Ill. July 3,2003), and states that "A court may consider the allegations in the complaint to be true "unless controverted by the defendant['s] affidavits." Despite this, Defendant Geiger does not reference any such affidavit, and Plaintiff could not find one in his disorganized "paper blitz" response. Regardless, Plaintiff is entitled to jurisdictional discovery to defend his position, and has argued additionally for jurisdiction that makes Defendant Geiger's assertions irrelevant.

68.   Defendant cites FRCP 4(a) regarding the PA long-arm statute (which is quite generous in its own right), but neglects to address RICO's nationwide service of process provision in 18 USC §1965(b), or that his actions caused harm to Plaintiff in Pennsylvania, including with potential employers.

69.   Defendant restates the Pennsylvania Long-Arm Statute. No response is required.

70. **Denied.** Defendant has in no way established that he is "not the individual Plaintiff has alleged him to be." Further, Plaintiff's allegations must be considered true for this motion under the most-favorable light standard.

## VI. MOTION TO DISMISS/FAILURE TO STATE A CLAIM

71. Defendant Geiger makes a garden-variety citation of the legal standard for a motion to dismiss, which appears to approximate the reality.

72. Defendant cites Brandenburg by saying that "only predicate acts of racketeering activity provide a basis for recovery under RICO §1964(c). This statement, by itself, is meaningless, as Plaintiff has alleged predicate acts by Defendant Geiger relating directly to the RayFAQ (Sarbanes-Oxley and Hobbs Act violations), and has alleged that Defendant Geiger aided and abetted the RICO enterprise in violation of 18 USC §1962(d) through his ownership of the ray-gordon.com domain. Under 18 USC §1962(d), no predicate acts are required for a court to find liability. In this case, the use of the ray-gordon.com domain, which Defendant Geiger owns, was central to the RICO enterprise. See, e.g., Beck v. Prupis, 529 US 494 (2000), where the United States Supreme Court held:

> "Under our interpretation, a plaintiff could, through a §1964(c) suit for a violation of §1962(d), *sue co-conspirators who might not themselves have violated one of the substantive provisions of §1962.*" (Emphasis Added).

73. Defendant cites regarding apportionment of damages, which is not relevant to liability. Defendant is either liable or he is not.

74. Defendant cites the need for Plaintiff to establish proximate cause, and this requirement has been met.[19] Further, the underlying facts clearly support this allegation.

---

[19] See, e.g., Amended Complaint, p. 63, ¶ 189, where he overtly alleged proximate causation.

75.   **Denied.**  Defendant Geiger has offered no evidence in support of his averment that he is not who Plaintiff has alleged him to be, which is the owner of the ray-gordon.com domain and, by preponderance of the evidence, the sole publisher of the website.

76.   Defendant Geiger states that:

> Defendant, not being the author and creator of the intellectual web content Plaintiff's averments against Defendant are based upon, cannot have committed any predicate act to justify any RICO conspiracy claim, or any other state or federal civil, criminal or tort claims against Defendant for which relief can be granted.[20]

Aside from Defendant Geiger not supporting his factual assertion (which is not relevant to this motion) that he is not the author and creator of the content in controversy, that does not exclude him from being the one responsible for it being published on the web, especially on a domain which he owns.  Further, as Plaintiff has alleged that Defendant Geiger's entire posture (that he had no prior knowledge of Plaintiff) is fraudulent, those allegations must be treated as true for this motion.

## VII. MOTION TO DISMISS/IMPROPER VENUE

77.   **Denied.**  Defendant Geiger has, for the umpteenth time, claimed that he is "not the individual that Plaintiff alleges him to be," and this is patently false.  It is also not the slightest bit refuted by Defendant, nor is it relevant to the instant motion.  The issue is not a simple one of domain registration, but the publication of the website, Defendant Geiger's role in its publication, and his role in allowing the use of his domain for a nationwide RICO conspiracy.

78.   Defendant cites a trademark case, <u>Woodke v. Dahm</u>, 70 F.3d 983,985 (8th Cir. 1995), as being somehow relevant to this action by saying that "in that case, the court held that an  acceptance of plaintiff's argument that venue was proper in his home district because that was 'the location of the ultimate effect' would 'work a transformation of the venue statute that

---

[20] Defendant's Memorandum, ¶ 76, p. 21.

21

Congress could not have intended.'"  Plaintiff responds that a) that decision is from the Eighth

Circuit; b) in a trademark case; c) that RICO has **statutory** nationwide service of process; d) there

is no "venue statute" at issue here; and e) that the Pennsylvania long-arm statute further confers

jurisdiction due to the very "ultimate effect" doctrine cited by Defendant Geiger.

79.   Defendant makes an irrelevant citation regarding domain registration and

copyrights.  Plaintiff instead is suing over what **appeared** on the domain, and Defendant Geiger's

use of the domain in furthering a RICO enterprise.  He has never argued that Defendant Geiger

did not have the right to register the ray-gordon.com domain, and has only asked for transference

of the domain to offset the damage caused by its prior use, which included calling the website

which appeared on it "The **Official** Ray Gordon FAQ."

80.   No response to this averment is required.

## VIII.  CHANGE OF VENUE

81.   Defendant's argument for a change of venue to Mississippi ignores the reality of

this case: most of the evidence, witnesses, and parties are more conveniently situated to this

Court than the Mississippi court, and to the extent any witnesses or evidence in Mississippi are

relevant, they can be deposed by written questions and/or in that jurisdiction, and in fact cannot

be compelled to travel to this district regardless.  Defendant's argument is therefore a "red

herring" reflective of his urgent desire to get this case dismissed before discovery unravels his

position.

82.   **Denied.**  Unless Defendant Geiger wishes to pay for Plaintiff's expenses and

travel, including his witnesses, and to conduct as much of the case as possible by teleconference,

a change of venue would put a severe burden on his already-limited resources.  It is not Plaintiff

who involved himself in Defendant's life by allowing an "Official Thom Geiger FAQ" to be

published on his domain.  Had Plaintiff done anything similar to what he has alleged Defendant

Geiger did here, he certainly would have expected to be "haled into court" in Mississippi.

Defendant Geiger seems to want the luxury of acting in concert with individuals all over the

country, including Plaintiff's hometown, without availing himself of the accompanying legal

responsibilities.  It is bad enough that Plaintiff has been ambushed from such a distance in

cyberspace; unfortunately, the damages he suffered and continues to suffer hit far closer to home.

83.   No response is required.  To the extent one is required, the motion should be

denied as the statutory requirements of 28 USC §1404 have not been met.

## CONCLUSION

84.   Plaintiff is without sufficient information to respond to this averment; to the

extent a response is required, he stands on his Amended Complaint as filed.

85.   Defendant Geiger is arguing factually, which is inappropriate for this motion, in

an attempt to have his motion to dismiss (which courts rarely grant for good reason) substitute

for a trial, with the "slight" difference being that Plaintiff has not been allowed discovery,

witnesses, or cross-examination.  Nothing has been proven, no evidence has been entered into

the record, and this case has not yet begun.  It is not the place of this court to engage in

factfinding; that is for a jury.

86.   Defendant's statement of intent to pursue a motion for sanctions is not only

premature and irrelevant, but should also be filed separately.

87.   Defendant seems to base his "rule 11" statements on the notion that a USENET

posting somehow trumps actual domain records from a website regarding who the publisher is.

This is not the case at all.  Subsequent to the USENET posting in question, Plaintiff uncovered

Defendant Geiger's name through discovery of NamesDirect (the registrar), and only then did

Defendant Geiger make public that the domain was his.  Nowhere in his Amended Complaint does he claim factual knowledge that Doe #6 was the RayFAQ author, and that he pled in the alternative only further underscores his acknowledgement that the facts are uncertain.  To sanction any Plaintiff for correctly pleading based on information discovered through subpoena such as the one to NamesDirect would be unjust and chilling.

88-89.  Regarding the distinction between domain names and websites, Defendant has engaged in repeated hair-splitting that amounts to a claim that a domain owner has little or no control over what appears on that domain's website.  This is false on its face.  Defendant seems to think that by repeating his bogus distinction often enough, that he will obfuscate the issue of publication, but the truth is the same as Plaintiff stated several times earlier:

a.     A domain owner controls who can upload files to any website attached to that domain.  Plaintiff, for example, controls who may upload files to the www.cybersheet.com domain which he owns.  This is similar to a car owner controlling who may drive his car, or a homeowner controlling who may remain in his home.

b.     A "physical website" refers to the actual files that are under the umbrella of the domain name.  The purpose of a domain name is to control which IP address destination is reached when the domain is entered, and *only the domain owner* can determine this.  If the IP address is changed (such as with a new host), then the public does not have to learn a new set of numbers, as the domain will not change even if the underlying IP does.

24

For the reasons averred herein, the instant motion should be **denied.**  An appropriate

form of order is attached.

This the 3rd day of January, 2006.


Gordon Roy Parker
Plaintiff, Pro Se
4247 Locust Street, #806
Philadelphia, PA  19104
(215) 386-7366
GordonRoyParker@aol.com